Porter, J.
The petitioner asserts that he is the owner of a lot of ground situated in the fauxbourg, St. Mary, having certain metes and boundaries on which he has made improvements; that he has wished to sell it, and that he could have obtained a great price for it. But that one Lewis Heerman, of the said city, gives out in speeches, that he is the owner and proprietor of the same; that he (the petitioner) had requested him to desist from thus slandering the title, or if he had any just *699 claim for the property, to bring a suit for it. That the said Heerman will neither give up his claim continues to assert his right to it, to the damage of the petitioner, $20,000.
The petition concludes with a prayer, that Heerman may set forth his title, if any he has, or pretends to have, for the said parcel of land, or any part thereof, and on his not producing a satisfactory title, that the petitioner may be quieted in his possession against his said claims and pretensions; that he be decreed and enjoined utterly to desist therefrom, and if the court shall decree that the said Heerman is the true owner of the said premises, that he be decreed to pay for all the improvements which the petitioner has made on the land, and expences by him incurred therein, to the amount of $90,000.
The defendant answered, denying all the allegations in plaintiff’s petition; and specially alleged, that he was the true and lawful owner and possessor of a certain lot of land, situated in the suburb of St. Mary, having certain metes and bounds; that the prolongation of these boundaries to the river, included all the land within them, known by the name of batt *700 ure; that the plaintiff has not any legal title to the said premises, or any part thereof; and he further prayed that he may set forth his title, or pretended title, under which he claims.
The defendant further answered, that all the improvements made by the plaintiff on the premises, were made in his own wrong, and were an injury to the defendant, and concluded by a prayer that the premises may be enquired of by a jury.
The real question arising out of this petition and answer is, whether the alluvion or batture, in front of a lot, on Chapitoulas road belongs to the plaintiff or defendant? The plaintiff asserts his right to it by possession and a conveyance from the heirs of Bertrand Gravier. The defendant claims in virtue of a sale made by said Bertrand Gravier and wife, in the year 1789, to one John Vessier, and by said Vessier, regularly conveyed, by several mesne conveyances, to him.
This cause was tried by a jury; on the part of the plaintiff, nineteen facts were submitted; on that of the defendant, twenty-one; and eight questions.
Before we can arrive at the merits of the cause, our attention is called to various bills of exceptions taken by the defendant.
*701 I. The competency of Brandt, one of the jurors, is first objected to. From the first and second bill of exceptions, it appears that the plaintiff discovered this defect, after the jury were sworn, and that he immediately communicated it to the court, offering to withdraw this juror, and replace him by another, or to go on and try the cause with the remaining eleven; to both these propositions the defendant refused to accede.
1821. It does not very satisfactorily appear that the juror was incompetent; for though the declaration made by him applied to the defen- dant's title, he followed it up by asserting, that he did not believe either of the parties had a right to the property,-that it belonged to the
public. The plaintiff insists that the challenge should be made before the juror was sworn, and that it came too late. Such is declared to be the law, 3 Bacon ab. 764. 7 Cranch, 290; and a new trial has been refused when the objection was not taken in due time. 2 Bay, 150. But it is unnecessary to examine that point, and see whether cases might not arise which would be properly an exception to the general rule. For as the defendant in this cause refused *702 Permit the juror to be withdrawn, he cannot now make his incompetency the ground for remanding the case for a new trial.
II. The defendant, on the swearing of the jury, called on the court to direct that the evidence about to be given should be taken down by the clerk; this was refused; and a bill of exceptions being taken to this opinion, a question of some importance is presented.
This court, which has supreme appellate powers, is limited as to the manner in which it exercises them, and can only take cognizance of causes brought before it in that way, which the legislature has thought proper to direct.
On the organization of this tribunal, under the constitution, the act establishing the practice to be pursued in it, provided that there should be no reversal for any error in fact, unless on a special verdict rendered in the district court, or on a statement of the facts agreed upon by the parties or their counsel, &c.
It was, I believe, the general understanding of the profession throughout the state, as soon as this law was known, that the facts of a cause could not be presented to this court in any other mode, but that which the act pointed out.
*703 Judicial interpretation of the statute soon confirmed this idea.
In the case of syndics of Hellis vs. Asselvo, 3 Martin, 201, the appeal was dismissed because the statement of facts was signed after, and not before judgment; it was not pretended there that the statement was incorrect; but it was rejected because the law had declared it should come up in an other manner.
In the case of Longer & al. vs. Pigneau, ibid. 221, the court decided that it could not act on the information derived from facts stated in the opinion of the judge.
In Beard vs. Poydras, ibid. 505, one of the parties offered to introduce new testimony. It was refused, and the court observed that the legislature had determined the mode in which causes should be sent up; that this was not the manner pointed out by the act, and that evidence coming in any other way was inadmissible. The same principle was recognized and enforced in Dubreuil vs. Dubreuil, 5 Martin, 81.
The power of the court, in regard to new trials, I understand to be exercised under the same limitation. Whenever we gather from the record, brought up according to law, that *704 the merits of the case require us to remand a cause, it is our duty to do so. But we cannot arrive at a knowledge of the facts which require us to do this, in any other mode but that which the law points out.
The legislature has thought proper to afford to the citizen the benefit of a new trial from this court in many cases; as when improper evidence is received; when proper evidence is rejected; when new testimony is discovered after trial, which by due diligence could not be had before; when there is error in the opinion of the court on matters of law: in these and similar cases the remedy exists, because the mode of bringing the error before the appellate tribunal is pointed out. But if that legislature has not provided the means by which the court can get the facts before it, so that it may be enabled to judge of the propriety of granting a new trial, where the verdict is contrary to evidence; does it follow, as a consequence, that this court can supply the defect, and direct a mode in which the facts shall come before us? I am clear in the opinion that it cannot; and that we are not permitted to take notice of facts, either for the purpose of granting a new trial,or in giving final *705 judgment, in any other manner but that which the law has pointed out, and that where the legislature has chosen to be silent as to the means-it is an admonition to this court, that the end did not require they should be extended.
The reasoning is strengthened by the circumstance that when the act was passed, making the verdict of the jury conclusive on parties submitting a cause in the manner it has been done here; provision was made for taking down the evidence in every other case, except where a cause was presented on special facts. Acts of 1817, page 34, sec. 12.
It is true that in some of the courts in this state, since the passage of the act just alluded to, parties have been in the habit of taking down the evidence. But in those courts where that practice has been pursued, resort was had to it (as far as my experience extended) by consent; for as the verdict was uncertain, each party wished to guard against the consequences. This was the case in the suit of Porter vs. Dugat, decided at the last term of this court for the western district, and as the objection was not made there, no inference can *706 drawn from the court, remanding it for a new trial.
III. The fourth and fifth bills of exception were taken to the introduction of private deeds, the execution of which by the parties, was however admitted. I have been at a loss to discover on what this objection rests; an argument might perhaps be raised as to the time when they operated as notice to third parties, but that could not prevent them being evidence to go to the jury.
IV. A plan of the plantation of Bertrand Gravier, made by F. Trudeau in the year 1788, was offered in evidence, to the introduction of which the defendant objected upon the ground that Jean Vessier, under whom he claimed, did not purchase in pursuance thereof. The judge in permitting the paper to go to the jury, stated that they were not to consider the plan evidence in itself; but that it might be evidence if connected with the purchase, by extraneous proof. To this opinion the defendant excepted.
Immediately after the bill of exceptions was signed, the plaintiff asked permission to withdraw the plan which the jury had before *707 them. The defendant resisted this, stating that he did not wish to use the plan as evidence. But objected that the plaintiff had not a right to withdraw it. The court however, allowed him to do so, stating to the jury that they were not to consider it as evidence in the cause. To this opinion the defendant also excepted.
The most regular course, perhaps would have been, to have called on the party to shew the relevancy of the plan to the purchase made, before it was submitted to the jury. This is the ordinary practice, though it is difficult, when the evidence in a cause is made up of a variety of facts, to prescribe a certain order in which they must be presented. But the question now is, whether the admission of the document before its connexion with the defendant’s title was shewn; under the declaration of the judge, that it was not evidence in itself, but might hereafter be made so by other testimony, has worked such an injury to the party that the cause must be sent back. I think it has not; because the judge told the jury that it was not evidence against the defendant until other proof was brought connecting it with the title; because it was withdrawn *708 under a direction from the court, that the 1821. jury were not to consider it; and because it appears that they did not so consider it; for in their finding on the third fact submitted on the part of the plaintiff, they declare that the plan was not in proof before them.
On the right of the defendant to have this paper retained after the plaintiff offered it, altho’received under his exception, I should have no doubt, were it not for his own declaration annexed to, and making part of the bill of exceptions, “ that he did not want or intend to make use of the plan in evidence.” If he did not want it, then he could not be injured by its being withdrawn.
It is this circumstance which distinguishes this case from that of Posten vs. Adams; there the party wished to use the paper he first objected to.
V. The eighth bill of exceptions was taken to the refusal of the judge to charge the jury on different points of law, and directing them erroneously on others ; as nothing but facts could lawfully be submitted to the jury, and as any law which they might mix up with their verdict, must be disregarded here; I do not *709 see how the defendant could be benefited by the charge he required, or injured by that which the judge delivered; it is unnecessary therefore to remand the cause for that reason.
VI. There is another bill of exceptions in which the defendant objects to the opinion of the judge, on the pertinency of the facts submitted to the jury.
The first law on this subject, contained in 2 Martin's Digest, 156, ordains that the court shall examine whether the facts are within the pleadings, and strike out such as do not fairly arise out of the petition and answer.
The next statute on the same point: Act of the legislature, 1817, page 32, sec. 10, directs that the pertinency of the statement of facts shall be judged of by the court.
If the legislature intended these statutes to have the construction contended for by the defendant in this cause; that the facts as stated in the petition and answer, should be submitted and nothing else; there would not have been any necessity to provide that the parties should draw up a statement of the facts, and that the pertinency should be judged of by the court.
*710 This law has received a different construction, and the practice under it has been, that the plaintiff may present to the jury facts which go to establish the claim set up, although they should not have been set forth in the petition. It is true, that these facts must not be at variance with the allegations contained in the petition and answer. But it never has been understood that all the different circumstances which give a right, or furnish a defence of a particular kind, should be put in the pleadings. The facts submitted are always pertinent when they tend to support the title set up; and as no replication is filed, the plaintiff must often require that matter, not alleged in his petition, should be put in the statement, to rebut that growing out of his adversary’s answer. If, by our loose mode of pleading, either party should be surprised, the law has vested ample power in the judge to correct the injury. Nothing of that kind however, appears here, no case ever heard in this court shewed parties better prepared, more perfectly acquainted with the strong and the weak part of their adversary’s claim, and the care with which every fact that could bear on the cause was drawn out, and submitted, *711 proves that both came fully acquainted with what they had to resist, and what they must establish.
These objections over-ruled,—the next enquiry is, what facts have been ascertained by the verdict? The jury have found
That Bertrand Gravier, of the city of New-Orleans, died intestate, in the year 1797; that at the time of his death he was possessed of a farm in the neighbourhood of New-Orleans, of which the premises in question formed a part; that Livingston, the plaintiff, took possession of the property now in dispute, in the year 1807, and that he is still in possession thereof.
That prior to the time of the sale of Gra-vier to Vessier, under whom the defendant claims, the said Bertrand Gravier, had laid out a part of the plantation above mentioned, into building lots bounded by streets.
That, at the time of the sale to John Ves-sier, there was a road, at least forty feet in width, lying between the levee and the said lots; and that outside of the levee, and between it and the river, opposite to the said lots, there was a parcel of land, partly original, partly formed by alluvion, which was *712 covered with water only at the time of annual inundation—was the rest of the year uncovered, and was of such height and extent, that a part of it might have been reclaimed, occupied, and converted to the use of the proprietor; which land being increased by alluvion, is the premises in question.
That the plaintiff has been in possession for more than ten years, with the exception of the time he was dispossessed, in the years 1810 or 1811, by the marshal, and a trespass committed in 1808, by the same officer.
In opposition to these facts, the defendant has presented his title, under the following finding:—
That John Vessier purchased from Bertrand Gravier and his wife, in the year 1789, a certain lot or parcel of ground, in the now suburb of St. Mary, in front of which is the soil called batture, being the premises in dispute, and that part of said lot has been purchased by the defendant, from those who held under said Vessier, by several mesne conveyances, which conveyances are annexed to the facts found by the jury, and make a part thereof. That the plaintiff was dispossessed in 1808 and 1810, by the marshal, and put in possession in the year 1813.
*713 A variety of other facts have been submit-ed and found, as to the sum of money expended by petitioner; the period when each set up their respective claims, &c. all of which, from the view I have taken of this question, are quite immaterial in the decision of this cause. The law, which the jury has blended with their finding of the facts, must be entirely disregarded. 6 Martin, 209.
But before we can reach the merits, another question, which has been raised, must be disposed of.
It is contended, that by the law, in virtue of which this action is commenced, the only judgment, which the court can pronounce, is to decree, that Heerman shall bring suit.
Little can be gathered from the books, as to the particular practice adopted in Spain, in cases of this kind.
The law, par. 3, tit. 2, l. 46, declares, that no person can be compelled to bring suit, except in particular cases, wherein the judge may, by law, oblige him to do it; as when a man publicly says, that another is his slave,
&c. in these and like cases, the person injured may petition the judge to oblige the defamer to bring suit, and prove what he has *714 said, or to retract,or to make such reparation as the judge shall deemjust; if he refuses to bring the suit, the party agrieved shall be for ever absolved from the charge made against him.
This law applies, according to the Spanish authority, to defamation respecting property, as well as person, and that whether itbe moveable or immoveable, Gregorio Lopez, on the above-cited law, n. 2. Elizondo Practico Universal, vol. 2, p. 136.
Now, when a suit is commenced like the present, the defendant should do one of two things, either deny that he has said so, which would amount to a waiver of title, or admit the accusation, and aver his readiness to bring suit.
In the first alternative, this court would proceed to try the fact, whether he had defamed the title or not, and give damages accordingly.
In the second, they would order suit to be commenced. This, it appears to me, is the regular course. The object of this law was intended to protect possession; to give it the same advantages when disturbed by slander, as by actual intrusion. To force the defamer *715 to bring suit, and throw the burthen on him of proving what he asserted.
If this course had been pursued here, the defendant Heerman would have been directed to bring suit (in the language of the law) to prove what he had said; and the plaintiff, relying on possession, would have been maintained in it, until a better right was shewn. Instead of doing this, he has chosen to maintain the truth of what he has advanced, by setting forth his title in his answer, and avering it to be a better one than the plaintiff’s. Having done so, I think the court can examine it, as well in that answer, as if set forth in a petition; it is only, in fact, anticipating the order which the court must have given, and coming forward, at once, with that title which the court would have directed him to produce in another suit. His adopting this course, at his own choice, cannot change the mode in which the proof must be adduced ; he must make out his title as alleged; and cannot take from the plaintiff the advantage which he derives from his possession, by varying the form in which he has thought proper to make good his claim to the premises.
If it should appear, that he has a title for *716 the premises, I have no doubt, that we can decree, that he has not slandered The plaintiff's title; that he has a better one; and that such decision would form the res judicata as to their titles, in virtue of which the defendant can, at any time, obtain possession by an action to that effect; for it is not necessary to enable the court to pronounce on title, that there must be a prayer to be put in possession. If the plaintiff succeeds, we can declare, that the defendant has failed to produce a title; that the plaintiff be preserved in the quiet enjoyment of his property, and the defendant be enjoined from reasserting this title to it.
This case differs little from the case of Gravier vs. the Corporation of New-Orleans, except. that trespass, as well as slander, was alleged there.
But if this point was doubtful, I should have great reluctance to send the parties back on a mere matter of form, to travel over the same ground again. Interest republicœ ut sit finis litium. And never did the maxim have a more proper application than in the cases which have grown out of this subject.
Having arrived, at last, at the merits, I *717 shall state, as concisely as the nature of the subject will permit, what I understand to be the law in cases circumstanced like this. After sixteen years, that the question has been in one shape or other before our courts, and the best talents of the bar and the bench employed in its discussion, the materials for forming an opinion, are in the hands of every one; and to cite authorities in support of the plain elementary principles, by which I consider the case to be governed, is only to quote what has already been cited twenty times before.
By alluvion, I understand, that which is added to land, little by little, so that we cannot know how much is added at each moment of time.
And, that all a river thus adds, by alluvion, to our field, becomes ours by the law of nations, or public law, common to all countries.
He, therefore, who owns land, bounded by the river, acquires whatever is added to it, as he suffers the loss of that which is taken from it.
When, therefore, a dispute arises between different purchasers, claiming under a person who once owned the riparious estate, their *718 rights must be determined and governed by the fact—to which did he give a boundary on the river?
The defendant, Heerman, to establish his right to the property, produces a bill of sale from Bertrand Gravier and wife, to John Vessier, dated the 19th of January, 1789, by which they sell un terreno de mi, la dha Dna. Maria Josefa Deslonde, compuesto de dos cientos y quarenta pies de frente y ciento y sesenta de fondo, situada fuera de esta ciudad y haciendo frente à la leevé de este rio. A lot belonging to the said Maria Josefa Deslondes, having 240 feet in front, and 170 in depth, situated outside of the city, fronting, or having a front to the levee of the river.
The defendant owns a portion of this, containing 73 feet 8 inches in front, regularly conveyed from John Vessier; and in virtue of the title, asserts his right to all the alluvion formed between the levee and the river.
The force and effect of the words face au fleuve, face, frente, frente al rio, in a deed, or other act of conveyance, was most elaborately discussed in the case of Morgan vs. Livingston. Under the circumstances of that case, and the facts proved in it, the court *719 held, that these expressions give the first proprietor a boundary to the river.
In that case it was proved, that the words mentioned were used and universally understood, to designate an estate bounded by the river.
And it was established, that at the time of the sale from Gravier to Poeyfarré, there did not exist any private property susceptible of ownership between the trapezium and the river.
But in this case, the facts are wholly different. First, it is found by the jury, that the words used in the deed from Gravier, and wife to Vessier, frente a la leveé, front to the levee, do not signify a boundary on the river.
And that, at the time Gravier sold to Vessier, there existed outside of the levee, and between it and the river, land susceptible of ownership.
If this last circumstance stood alone, without the finding of the jury, on the expressions used in the deed, I should think, that it would controul the effect of those words, which have been held to carry the vendee to the river. For, if it had been the intention of one of the parties to sell, and the other to *720 acquire the private property that intervened, it would have been so expressed; and the omission to insert it in the act of sale, is clear evidence to me, that did not enter into the consideration of the contract.
But we are free’d from all difficulty in this case, by the finding of the jury.
It has been held in the case of Morgan vs. Livingston, 6 Mart. 220, and that of Gravier vs. mayor, aldermen and inhabitants of New-Orleans, Report of case, 17, that the meaning of certain expressions in deeds, giving boundaries was properly ascertained by parol evidence, proving the sense in which they were used, and generally understood.
The meaning of the expression in defendant’s deed, frente á la leveé, has been submitted to the jury, and found by them not to give a boundary on the river.
A great deal of discussion took place at the bar, whether the lot purchased by Vessier was what is called a limited field, or whether the law in agris was in force in this country. But these points it is unnecessary to decide on.
I have, in the opinion just delivered, noticed every thing which I consider material, *721 to answer, and comment on, all that was said, would be to write a treatise instead of delivering an opinion.
I have examined the case with the utmost attention, and with an anxiety that has more than once been felt as painful, to do that which is right between the parties and satisfy the law. And on the whole, I am of opinion, that, as at the time of the sale from Gravier and wife, to Vessier, there existed a portion of soil susceptible of private ownership, between the levee and the river; that this soil was retained by the vendor, and that the expressions in the deed, frente à la leveé, did not carry the purchaser beyond it.
That as the front boundary of said lot is given, in the act of sale, by particular expressions, which expressions the jury have found were not used under the former government, to signify a boundary on the river; that the purchaser did not acquire a riparious estate, and consequently, that he has no right to the alluvion formed in front of it.
I am, therefore of opinion, that the judgment of the district court be affirmed with costs.
*722 Mathews, J.
The principal difficulty I find in the decision of this cause, as it is presented to the court, arises from the situation of the appellant. He is a defendant in an action for having slandered the title of the plaintiff to certain property, claimed by the latter, as set forth in his petition, and of which he has had uninterrupted possession during a long period of time.
The law, on which this action is founded, authorises a judgment, requiring and compelling a person who speaks against the title of a bonafide possessor, by asserting a right in himself, either to desist from such assertions, or to bring suit in support of his alleged claim; for the purpose of opposing his title to that of the possessor, in order that the respective claims, rights and titles of the parties may be finally settled according to law and justice.
If the pleadings in the present suit, do place the defendant in a situation similar to that which he would hold as a plaintiff, in an action which he might be compelled to institute; I can see no good reason for delaying a final judgment in the case, and that such is his situation, I agree in opinion with judge Porter.
*723 The numerous exceptions taken to the propriety of the proceedings in the court below, have been so fully examined and correctly determined, that I consider it useless farther to notice them.
As to the merits of the case, I have entertained but one opinion, in relation to the property of which the premises in dispute make a part, since the judgment in the suit of J. Gravier vs. the city, to the present time. I have always believed, that the alluvion or batture, as it is called, so far as it was sufficiently formed, to be a subject of private or individual ownership, at the time when B Gravier sold the lots of land on the front of his plantation, made a part of said plantation, that the right to it was vested in him, and that he had acquired a complete title according to our laws, on the subject of alluvion.
The verdict of the jury in this case, shews that the lot or parcel of land in dispute, being a part of said batture or alluvion, was thus formed, and did exist at the time when Bertrand Gravier, sold the lot of land, situated immediately in the rear of the disputed premises, to the person under whom the defendant claims. And I am opinion that the expres *724 sions in the deeds of conveyance offered by him, are not sufficient to support his claim, against that of the plaintiff who claims under the same original title, viz, that of B. Gravier.
I doubted much on the propriety of the decision, in the case of Morgan vs. Livingston, and finally assented, under a conviction that full proof had been adduced shewing that no alluvion existed in front of the trapezium, at the time of its sale to Poeyfarré, the vendee of B. Gravier.
Upon the whole, I am of opinion, that the judgment of the district court ought to be affirmed.