JAMES WINSLOW, TRUSTEE, ETC. *v.* THE TROY IRON AND NAIL FACTORY, MALCOLM McDOWELL, AND THE COVINGTON AND LEXINGTON RAILROAD COMPANY.

1. The remedy, by injunction, exists under special circumstances, to enforce the execution of a trust with regard to chattel property, and to preserve the same from waste; or, when the ordinary remedies in law would be inadequate to correct the mischief.

2. It will be exercised in favor of a trustee acting under a mortgage, given by a railroad company, upon all its property, for the security of bond-holders, in case it is desired by such trustee, to prevent the sale of the *driving wheels* of a locomotive, temporarily detached for the purpose of repair, and afterward levied on by other creditors of the corporation.

3. Where the mortgage is made in Kentucky upon property situated there,

and valid by the laws of that State, it will be recognized and enforced, as to property brought into this State, in good faith, although there has been no compliance with the laws of this State requiring chattel mortgages to be filed in this State.

SPECIAL TERM.—On motion for a restraining order *pendente lite*.

The facts sufficiently appear in the decision.

*Coffin & Mitchell* and *Lord & Wright*, for plaintiff.

*Mallon & McDowell*, for defendants.

SPENCER, J. A motion has been made, in this case, for an injunction, to protect property *pendente lite*, on a petition filed by the plaintiff to enjoin the defendants from proceeding to subject certain mortgaged property to the payment of a claim held by the defendants, the Troy Iron and Nail Factory, against the Covington and Lexington Railroad Company. It appears from the petition, and affidavits in its support, that the Covington and Lexington Railroad Company, organized under a law of Kentucky, are empowered to construct and maintain a railway, with its appendages, from Covington to Lexington, in said State, and appropriate the exclusive use thereof, with suitable machinery, for the transportation of freight and passengers, receiving tolls therefor.

Having partially constructed the road, and put it in use, and being in want of funds to finish and equip it entire, on the 8th day of April, 1853, they made and issued one thousand bonds of $1,000 each, with coupons attached for payment of interest semi-annually, the principal payable in thirty years; and to secure the payment thereof, executed and delivered to the plaintiff a deed of trust, conveying the road, with all its furniture and equipments, with covenants of further assurance. The bonds were sold by the plaintiff, and proceeds applied to the purpose of completing the road. On the 5th of June, 1855, being in want of further funds

for the same object, and having, meanwhile, been expressly authorized by an amendment to their charter, to issue and dispose of their bonds, as in manner above stated, and secure the same by pledging the property, franchises, rights and credits of the company, they caused another issue of bonds to be made, of the like sort, to the amount of $600,000, which were sold for their benefit; and to secure the same, executed another deed of trust to said Winslow, which, after reciting the obligations of the former deed, conveyed and transferred to him, as follows: "All their present and future-to-be-acquired property; that is to say, the road of said company, made and to be completed, etc., buildings, ground, etc., engines, tenders, locomotives, cars, machinery, and all other property now owned, or hereafter acquired, etc., with all franchises, rights and privileges of said company, to use the road and property, to charge and collect tolls, freights, etc., and receive any and all incomes and emoluments arising from, or growing out of, said property, or the use thereof," upon the trust that, in case said company should fail to pay the principal or interest due, or to become due, on any of said bonds, within sixty days after maturity thereof, the said grantee should enter upon and take possession of said property, rights, etc., and, as the attorney in fact, or agent of said company, should use and employ the same, for the protection of the interests and rights of the holders of said bonds, and, upon certain contingencies, sell the same; provided that, upon the discharge of said obligations, said conveyance was to become void. This deed also contained covenants for further assurance. It was duly recorded in Kentucky, but has not been recorded in Ohio, nor has a copy of it been filed in the recorder's office in Hamilton county.

At the time of its execution, the company was possessed of a locomotive called the "Paris," constructed for, and used in connection with the road, and so continued in use until the 20th February, 1856, when the master machinist of the company, having it in charge, took off its driving wheels at Cov-

ington, and brought them to this city, for the sole purpose of being repaired and refitted for the use of said road. While undergoing repairs, they were attached as the property of the railroad company, at the suit of the Troy Iron and Nail Factory, in an action brought in this court, to enforce a demand of said iron and nail company against said railroad company, and will be sold for that purpose, unless prevented by injunction.

It further appears that this locomotive is necessary to the proper enjoyment of the road, and to the business of the company; that it can not be used without the driving-wheels, and in consequence of its peculiar guage, is not suitable for use elsewhere; and it is also averred in the petition, that an interference with its use will embarrass the business of the road, diminish its income, and thereby put at hazard the plaintiff's security.

For these reasons, averring that the mischief will be irreparable, the petition asks, as final relief, that an injunction may be granted, perpetually restraining the defendants from interfering with said property, and that the same may be ordered to be given up to the plaintiff to the uses of said road, according to the purposes of said deed; and, until a final hearing can be had, asks a restraining order, or temporary injunction to protect the property from injury or sale.

When this case was first presented for consideration, I was inclined to doubt the propriety of affording the specific relief asked, for the reason that the plaintiff might have adequate redress in an action for damages; or, by an order of *replevin*, might obtain immediate possession of the property, without the necessity of an injunction, or of a *possessory order*. Upon further examination of the matter, all doubts have been removed, and I have no difficulty remaining upon the question of jurisdiction; and that upon either of two grounds—

1. Because of the power of the court, under special circumstances, to enforce the execution of a trust with regard to chattel property, and preserve the same from waste.

James Winslow, Trustee, etc. *v.* The Troy Iron and Nail Factory, et al.

2. Because the ordinary remedies in law would be inadequate to correct the mischief.

By the terms of the deeds of trust, referred to in the petition, all the property embraced therein is to be left in the possession of the railroad company, until default shall be made in the payment of either the principal, or interest, as it may become due on the bonds secured by them. Not only is all the property of the company thereby pledged for the security of these debts, but the income also, and profit arising from the management of the road; all of which is directly authorized by the charter of the company. There is, therefore, a trust clearly implied in law, if not expressed in deed, that the property shall be so applied and managed as to promote and advance the security intended for the prompt payment of the obligations as they matured. Any attempt to violate the trust, on the part of the company, or with its connivance, by the destruction or misapplication of the property, should be prevented by injunction upon the every-day principle and practice of preserving trusts in their integrity, and saving trust property from waste. If the company itself may not apply the property to other uses, without a breach of trust (as to the payment of its debts), so neither can a creditor, by process of law, take the property for the same purposes, without a violation of the rights of the *cestui que trusts;* and this at once disposes of the proposition made on the part of the defendants, that, by the laws of Kentucky, the interest of the mortgagor in chattel property may be seized and sold on execution for the payment of debts. In the cases to which that law applies, the mortgagor has a beneficial use in the property, for himself alone, until default made, which he may dispose of without complaint on the part of the mortgagees, and which, therefore, a creditor may take on execution. But when the mortgagor is left in possession of the property mortgaged, as trustee merely, to manage the same, so as that the use and profit thereof, either in whole, or in part, shall go to the mortgagee, such property can not be put out of his

hands voluntarily, without a breach of the trust, nor taken in execution without a destruction of it. In the latter instance, a creditor, suing in equity, might, in a proper case, have a receiver appointed to obtain the just portion of the profits belonging to the mortgagor to be applied to the payment of his debt, but could not have the property itself sold, to the destruction of the security. But—

2d. There is no adequate relief for the plaintiff in the present case, unless by injunction, and an order for the re-delivery of the property taken. It will be remembered that the present right of possession is in the railroad company, no default having yet occurred on their part. The plaintiff, therefore, could not lawfully obtain possession by *replevin;* his only remedy would be in damages, for the injury to his interest in the property. But damages, in such a case, would be wholly inadequate to recompense the injury. The intrinsic value of the property here seized may be small, indeed, easily estimated, and as easily paid; but, taken in connection with the machinery to which it belongs, and the whole in connection with the necessities of the road, and it is impossible to estimate the amount of the damage which may arise to the plaintiff, or those whom he represents, from the unlawful appropriation.

Without these driving-wheels, the locomotive to which they belong is rendered useless; and without the locomotive, even for a limited space of time, the usefulness of the road itself may be seriously impaired. Nor should it be forgotten, that machines of this description are not matters of ordinary merchandise, the loss of which can be supplied in a day or two. It requires time for their construction—and time, itself, in the management of a railroad, is of great consequence to its interests. It needs not authority to warrant the interference of equity in a case like this. Instances are by no means rare where such interference has taken place, to protect and preserve specific chattels from injury; indeed, it has never been refused where the extent of the injury is difficult to be estimated in an action at law. 1

Vern. 273, *Pusey* v. *Pusey;* 3 Atk. 384, *Buxton* v. *Lister;* 3 P. Wms. 389, *Duke of Somerset* v. *Cookson;* 3 Ves. 70, *Fells* v. *Read;* 6 Ib. 774, *Lloyd* v. *Loaring;* 10 Ib. 148, *Lady Arundell* v. *Phipps;* 13 Ib. 95, *Lowther* v. *Lowther;* Eden on Injunction, 367–8; 2 Story Eq. §709; 10 Vesey, 160, *Nut-brown* v. *Thornton.*

In the case of *Lady Arundell* v. *Phipps,* an injunction was granted to restrain the disposition of chattels taken in execution, by creditors, against Lord Arundell, from whom she had purchased them, out of her separate property. The chattels consisted of pictures, plate, linen, articles of ornament and furniture, and implements of household and husbandry, purchased by her for particular use. Lord Eldon granted relief, upon the ground that, "from the nature of the property in question, the purport and object of the purchase, it was impossible for her to have the benefit of it, unless she could specially enjoy it."

But the case of *Nutbrown* v. *Thornton* is particularly analagous to that under consideration. It was between a landlord and tenant, the former having entered and seized the cattle, crops, and other personal property upon the farm, which had been purchased with advances made by him to the tenant, under an agreement between them, that in case the rent should be in arrear, he might so enter and sell the property. It appearing to the court that the entry was not justified by the facts, an injunction was granted, not only restraining the sale, but ordering a restoration of the property to the plaintiff, on the principle of irreparable mischief. Lord Eldon, in answer to the suggestion that the plaintiff might have damages, asked, "How are damages to be estimated in such a case? The direction to a jury must be to give, not the value of those chattels merely, but the value to the tenant having this farm, enabling him to use them for the purposes of cultivation; and the very terms of the contract show, the landlord dealing with him thought him not able to stock the farm without a very large indulgence." The taking away the stock,

in that case, rendered the farm useless to the tenant; as the taking away the machinery in this, must necessarily impair, if not destroy, the usefulness of the road.

So far then, as the right to interfere by injunction is concerned, it is sufficiently clear; and the only question concerning it to be considered, is, whether the title of the plaintiff, under his mortgages, can be maintained?

. It is not denied that, by the law of Kentucky, these instruments are, in all respects, valid, to clothe the plaintiff with the title to the property, and that such title is not invalidated by leaving the property in the hands of the railroad company. But, it is claimed, that when this property was brought by the company into Ohio, even for a temporary purpose, and without the consent of the plaintiff, it became subject to the laws of Ohio, which declare "that every mortgage or conveyance intended to operate as a mortgage of goods and chattels, hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, unless the same, or a true copy thereof, shall be forthwith deposited with the clerk of the township in this State, where the mortgagor, if a resident, shall reside at the time of the execution thereof; and, if not a resident, then with the clerk of the township where the property so mortgaged shall be at the time of the execution of such mortgage." Curwen Rev. St. 1240.

Now, it is perfectly plain that this provision of the law of Ohio was not intended to apply to an instrument made, *bona fide*, between parties residing in another State, affecting property situated within such State, and wholly beyond the jurisdiction of Ohio at the time of making the contract, and subsequently brought within our jurisdiction, in good faith, and held there only for a temporary purpose of necessity, and, especially, without the knowledge of the mortgagee. As to all such cases, the requirements of the law, from the very nature of the thing, are impossible to be per-

formed, and are not, therefore, intended to be applied. The law refers, in terms, only to instruments executed in Ohio, or where the mortgagor is a resident of Ohio, or when the property is situated in Ohio at the time of executing the instrument, and its spirit and object extend no further; certainly not where good faith is observed on the part of the mortgagor, and he is not in any fault.

In 10 N. H. 46, *Offut* v. *Flagg*, a question arose as to the construction of a similar law in New Hampshire, the language of which was as follows: "No mortgage of personal property shall be valid, except as between the parties to it, unless possession shall be taken and retained by the mortgagee, or the mortgage shall be recorded in the office of the town in which the mortgagor may reside." It was held that the act did not apply to personal property mortgaged in Massachusetts, by an instrument there recorded, left in possession of the mortgagor, and by him taken into New Hampshire, and held for a period of several months. The court say, p. 50: "The general rule, as to conveyances is, that property passes under any instrument legally executed. To this there is this exception, that such conveyances, to operate as to third persons, must, in certain cases, be recorded. This is a limitation to the general rule, and can only exist by express contract." The court place great stress on the inconvenience and hardship that would follow if a mortgagor could, at any moment, dispute the title of the mortgagee, by removing the property from one State to another, without his consent; and say that, in the absence of any express provision for such case, it would be their duty to infer that they were not intended to be provided for by the legislature; better let the rule of "*caveat emptor*" apply.

The same course of decision was adopted by the Supreme Court of the United States, 13 Pet. 107, *Bank of U. S.* v. *Lee, et al.*, affirmed in 14 How. 266, *De Lane* v. *Moore, et al.* There, a deed of trust of some slaves in Virginia, executed between parties residing there, and valid by the laws of

Virginia, although possession of the slaves was allowed to remain in the grantor, was held to be valid in the District of Columbia, to which place the slaves had been removed by the grantor, possession remaining with him, and the deed not recorded in the District; although, by a statute of Maryland, in force in the District, it was provided "that no goods or chattels, whereof the owner shall remain in possession, shall pass, alter, or change, or any property thereof be transferred to any purchaser, etc., unless the same be by writing, and acknowledged before one provincial justice, or one justice of the county where such seller shall reside, and be within twenty days recorded in the records of the same county." The court says: "The statute has no reference to a case where the title has been vested by the laws of another State, but operates only on sales, mortgages, etc., made in Maryland. The writing is to be recorded in the same county where the seller shall reside when it is executed. The grantor residing in Virginia, it was impossible for the grantee to comply with the act." The same rule prevails in Maryland, 3 Harris & Johns. 499, *Bruce* v. *Smith;* in Tennessee, Martin & Yerger, 110, *Crenshaw* v. *Anthony;* in Louisiana, 7 Martin, 707, *Price* v. *Morgan;* Ib. 318, *Thuret* v. *Jenkins;* in New York, 12 Barbour, 631, *Martin* v. *Hill.* See also 2 Wallace C. C. 131, *Caskie* v. *Webster;* 6 Monthly Law Reporter, N. S. 410, *Langworthy* v. *Little.*

The only case in opposition to them is in 23 Vt. 279, *Skiff* v. *Solace,* where it was held that a mortgage made in New York, leaving possession of the property in the mortgagor, though valid by the laws of that State, was void as against an attaching creditor in Vermont, to which place the property had been taken by the mortgagor for a temporary purpose, inasmuch as, by the laws of Vermont, possession of the mortgaged property must accompany the title. The principle upon which this decision is made to rest is, that the law of comity did not require the courts of Vermont to respect the law of New York, in opposition to the interests of the citi-

zens of Vermont, claiming a right under the laws of Vermont. If this decision can be properly regarded as opposed, in principle, to the cases above cited, I should feel no hesitation in entirely disregarding it, and must express myself much surprised when it was said that such a case existed. But, in any event, giving it full effect, it does not apply to the case under consideration. If, by the law of Ohio, it has been declared that, in all cases whatsoever, when possession is allowed to remain with the mortgagor, the title of the mortgagee shall be void, the case in Vermont would be applicable to the point. But the law of Ohio makes no such provision. It declares that a certain class of mortgages shall be void, in a certain event, and those only, leaving all others to the operation of the common rule.

On the whole case, I am of opinion that there is nothing in the defense set up here to defeat the plaintiff's claim to this property, and that the injunction applied for should be allowed.

Injunction allowed.