Michelle **ELLENWINE and Alvie Ellenwine, as Parents and Natural Guardians of Dustin Ellenwine, Deceased, Appellants–Plaintiffs,**

v.

**Dawn FAIRLEY, D.O., Appellee–Defendant.**

No. 71A03–0403–CV–124.

Court of Appeals of Indiana.

Dec. 7, 2004.

Jerry Garau, Findling Garau Germano & Pennington, P.C., Indianapolis, IN, Attorney for Appellants.

Edward L. Murphy, Jr., Heidi K. Koeneman, Miller Murphy & Miller, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Michelle and Alvie Ellenwine ("the Parents"), as parents and natural guardians of Dustin Ellenwine, appeal from the trial court's grant of summary judgment in favor of Dr. Dawn Fairley on their claim arising out of her alleged malpractice. They present several issues for our review, which we restate as whether the Medical Malpractice Act precluded the filing of a claim to recover damages arising out of the alleged malpractice suffered by Dustin which resulted in his death.[1]

We reverse and remand.

On December 18, 1996, Michelle Ellenwine gave birth to twins Dustin and Bronson. Dr. Fairley was at all relevant times the treating physician. Complications arose during the delivery, and Dustin allegedly suffered severe neurological deficiencies as a result. Within days of his birth, one of Dustin's physicians informed the Parents that their son had suffered brain damage and was experiencing seizures as a result of oxygen deprivation during delivery. Dustin died on February 2, 1999.

Our review of this case starts with a most basic question: what is the exact nature of the claim before us. The claim arises out of the alleged malpractice of Dr. Fairley which resulted in the death of Dustin. The Parents did not attempt to file a malpractice claim until after Dustin's death. As a result, Dr. Fairley successfully challenged their claims through two motions for summary judgment. Both motions alleged that the claims were filed outside of the two-year statute of limitations which applies to medical malpractice claims.

Upon review of a ruling upon a motion for summary judgment, we apply the same standard as the trial court. *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003). Summary judgment is appropriate where the evidence shows that there are no genuine issues of material fact and that a party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences are viewed in the favor of the non-moving party. *Id.* Our review is limited to those materials designated to the trial court. *Id.* When the moving party asserts the statute

---

1. The Parents also assert that the trial court abused is discretion in permitting Dr. Fairley to amend her answer to include the affirmative defense of the statute of limitations. While the amendment was made thirteen months after Dr. Fairley filed her answer, the trial court concluded that she had not waived her ability to assert the defense by not amending her answer sooner. A trial court retains broad discretion in granting or denying amendments to pleadings, and that decision will be reversed only upon showing of an abuse of that discretion. *Nyby v. Waste Mgmt., Inc.,* 725 N.E.2d 905, 915 (Ind.Ct.App. 2000), *trans. denied.* In determining whether an abuse has occurred, we consider undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure the deficiency by previously allowed amendments, undue prejudice to the opposing party by virtue of the delay, and futility of the amendment. *Id.* Given the facts before us, we conclude that the trial court did not abuse its discretion in allowing the amendment.

of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000).

Indiana Code § 34–18–7–1 (Burns Code Ed. Repl.1998) states:

"(b) A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file."

Upon appeal, the Parents admit that while the two-year statute of limitations had passed before they filed their action, the exception which exists for minor children should be applied. Dr. Fairley counters by asserting that the exception for minor children only applies to actions filed on behalf of the child and only if the child is alive. She asserts that upon the death of the minor, the exception is extinguished.

This argument necessarily highlights an important distinction between the types of claims which may be brought as a result of alleged malpractice. The first is a negligence claim brought by or on behalf of the injured party. The second, which is at issue in this case, is a wrongful death claim[2] brought by the survivors of the party physically injured by the alleged malpractice. What is clear and obvious is that a negligence claim and a wrongful death claim are two wholly separate causes of actions which must be brought by different parties and which, for the most part, provide damages for separate types of injuries.

A person injured by the negligence of another is entitled to reasonable compensation, which is such sum as would reasonably compensate the victim both for bodily injuries and pain and suffering. *Evans v. Buffington Harbor River Boats, LLC*, 799 N.E.2d 1103, 1111 (Ind.Ct.App. 2003), *trans. denied.* To that sum is added past, present, and future expenses reasonably necessary for the plaintiff's treatment and all financial losses suffered, or to be suffered, as a result of the inability to perform one's usual occupation. *Id.* A claim jointly brought by a child's parents under the CWDS allows for the recovery of damages that inure to the benefit of the

---

**2.** There are two statutory sections which provide the right of a party to bring a wrongful death claim for the death of another. Indiana Code § 34–23–1–1, the Wrongful Death Statute, and Indiana Code § 34–23–2–1, the Child Wrongful Death Statute, both found in Burns Code Ed. Repl.1998, provide for recovery. Because the Parents claim arises out of the death of their child, only the Child Wrongful Death Statute applies in this case. *See Bailey v. Martz*, 488 N.E.2d 716, 723 (Ind.Ct.App. 1986) (in discussing the predecessor statutes to the current versions of both wrongful death statutes, held that the Child Wrongful Death Statute provided the only cause of action for wrongful death of a child), *trans. denied, superceded on other grounds by statute.* None-

theless, the discussion of the issues in this case is generally applicable to both statutes, and in those instances, we will refer to the cause of action as "wrongful death," which is not to be construed as being solely the Wrongful Death Statute or the Child Wrongful Death Statute. When it is necessary to refer to the Child Wrongful Death Statute specifically, we will refer to it as the "CWDS." However, recognizing that the two claims are entirely separate, we do not intend to imply that the requirements to file a claim or the damages available under the Wrongful Death Statute are the same as those under the CWDS. *See State v. Guziar*, 680 N.E.2d 553 (Ind.Ct.App.1997).

parents. Ind.Code § 34–23–2–1 (Burns Code Ed. Repl.1998). The damages which may be recovered include:

"(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of:

(A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;

(B) the child's funeral and burial;

(C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;

(D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and

(E) the administration of the child's estate, including reasonable attorney's fees." *Id.*

The only measure of damages which is consistent between those recoverable in a negligence action and those recoverable in a wrongful death action are those for the hospital and health care expenses which arise as a result of the wrongful act which caused the death. As noted by our Supreme Court, the "purpose of the Wrongful Death Statute is not to compensate for the injury to the decedent but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss sustained by rea-

son of the death." *Reeder,* 788 N.E.2d at 1242.

 A second important distinction between the two types of claims is when they come into being. A negligence claim arises as soon as the negligent act occurs. A claim for wrongful death, although the negligent act may have ultimately triggered the death, does not exist until the exact moment that the individual dies. *See Holmes v. ACandS, Inc.,* 709 N.E.2d 36, 39 (Ind.Ct.App.1999) (holding that the wrongful death cause of action accrues when the injured person dies), *affirmed on reh'g* 711 N.E.2d 1289, *trans. denied.* In effect, the fact which gives rise to the wrongful death claim-the death-exhausts the negligence claim. This conclusion is demonstrated by the Survivorship Statute, Indiana Code § 34–9–3–4 (Burns Code Ed. Repl.1998).

 According to the clear language of the Survivorship Statute, it applies only when a person receives personal injuries caused by the wrongful act or omission of another and subsequently dies from causes *other than those personal injuries. Id.* In other words, if the decedent dies from injuries sustained by the negligent act, the case becomes one for wrongful death and may not be maintained under the Survivorship Statute. *See Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 705 (Ind.Ct. App.1999). Only if the decedent dies from unrelated causes will the action fall under the Survivorship Statute.[3] *Id.* Additionally, a tortfeasor may be held liable under a wrongful death claim or the Survivorship Statute, but not both.[4] *Id.*

3. Application of the Survivorship Statute also changes the types of damages which may be recovered in a negligence claim. According to I.C. § 34–9–3–4, the personal representative of a decedent may recover only damages resulting before the date of death from those injuries the decedent would have been entitled to recover had the decedent lived.

4. This is so because in order to recover in a wrongful death action, the death must be caused by the wrongful act or omission of another, I.C. § 34–23–1–1 and I.C. § 34–23–2–1, but in order to recover under the Survivorship Statute, the death must have resulted from a cause other than the one which caused the personal injuries. I.C. § 34–9–3–4.

It has been consistently held that the statute of limitations found in the Medical Malpractice Act applies to claims under the CWDS and the Wrongful Death Statute. *See Randolph v. Methodist Hosps., Inc.,* 793 N.E.2d 231, 237 (Ind.Ct. App.2003), *trans. denied; Hopster v. Burgeson,* 750 N.E.2d 841, 853 (Ind.Ct. App.2001). Indeed, as will be demonstrated, the Medical Malpractice Act clearly indicates that claims brought under the wrongful death statutes are subject to the requirements of the Medical Malpractice Act when the cause of death is medical malpractice.

In *Goleski v. Fritz,* 768 N.E.2d 889, 891 (Ind.2002), our Supreme Court discussed the types of claims which fall within the purview of the Medical Malpractice Act. Specifically, it stated:

"The Medical Malpractice Act allows a 'patient or the representative of a patient' to bring a malpractice claim 'for bodily injury or death.' Ind.Code § 34–18–8–1 (1998). A 'patient' is 'an individual who receives or should have received health care ... and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice.' I.C. § 34–18–2–22. 'Derivative' claims 'include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient,' and include 'claims for loss of services, loss of consortium, expenses, and other similar claims.' *Id.* Accordingly, under the terms of the Medical Malpractice Act, before Dorothy died she was a 'patient' with 'derivative' claims insofar as she asserted claims for lost financial support, love, affection, kindness, attention, companionship, and reasonable funeral and burial expenses. As the wife of Lawrence, she clearly was a 'relative.'

She therefore met the statutory requirement to bring these claims as a 'patient' and was entitled to assert 'derivative' claims for these items under the Medical Malpractice Act." 768 N.E.2d at 891 (footnote omitted).

Given the definition of "patient" and "derivative" and our Supreme Court's holding in *Goleski,* there is little doubt that wrongful death claims which arise as a result of medical malpractice are subject to the requirements of the Medical Malpractice Act. With all of these considerations in mind, we turn to the actual question before us: did the claim which the Ellenwines filed fall with the statute of limitations for actions brought under the Medical Malpractice Act.

The case before us is not unlike *Randolph, supra,* in that the question to be decided in both revolves around whether the exception to the two-year statute of limitations applies. In *Randolph,* Kwabene was born on October 7, 1991, suffering from a severe anoxic brain injury. His condition did not improve and he died on May 7, 1992, seven months after his birth. On September 26, 1997, five and one-half years after his death, Kwabene's mother filed a claim on behalf of Kwabene for his injuries and also filed her own claim for wrongful death. This court determined that neither claim was timely when filed. 793 N.E.2d at 237. The *Randolph* court held that the exception which allows a claim to be filed until the minor's eighth birthday if the alleged act, omission, or neglect occurred before the minor's sixth birthday does not apply when the child has died. *Id.* at 235. Rather, it applies only to living children and Kwabene and his mother's claims should have been brought within two years of the occurrence of the malpractice.[5] The court's reasoning was

---

5. Because Kwabene died before his second birthday, the exception which allowed for a

logical and follows from the reasoning which led to the passage of the Medical Malpractice Act. *See id.* at 235–36. However, what was not addressed in *Randolph* is whether the exception to the two-year statute of limitations should be applied if the child has died during the period of time in which the claim could be brought under the exception but not within the traditional two-year period. That is the precise issue before us.

Here, Dustin was born on December 19, 1996 and died on February 2, 1999. His Parents filed their proposed complaint pursuant to the Medical Malpractice Act on October 12, 1999, claiming damages for his injuries and death. At anytime from Dustin's birth until his death, his Parents could have filed a valid negligence claim upon his behalf for his physical injuries. However, any such claim they had filed on his behalf would have expired with his death because they asserted that his death resulted from the same medical malpractice which resulted in his physical injuries. *See* I.C. § 34–9–3–4. Thus, they would have had to proceed with their own cause of action.[6]

Dr. Fairley contends that because the Parents did not file a claim on Dustin's behalf, their own claim necessarily had to be filed within the two-year occurrence based statute of limitations. *See Martin v. Richey,* 711 N.E.2d 1273, 1278 (Ind.1999) (stating that the medical malpractice stat-

ute of limitations is an "occurrence" based rather than a "discovery" based statute). In making her argument, Dr. Fairley relies upon the holding in *Martin* to assert that the injury was discovered within the two-year statute of limitations, and as such, it was necessary that the cause of action be brought within two years. We agree that *Martin* is applicable, but not for the purpose asserted by Dr. Fairley. With all due respect to Dr. Fairley's argument, the date of discovery of the injury is irrelevant here. The question as presented by the Parents is whether the Indiana Constitution prevents a reading of the Medical Malpractice Act such that they would be precluded from relying upon the extended statute of limitations to file a wrongful death claim.

Our standard of review is well-established when a statute is challenged as violating the Indiana Constitution. *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996). Every statute is clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *Id.* The burden of proof rests with the party challenging the constitutionality of the statute, and all doubts are resolved against that party. *Id.* When there are two reasonable interpretations of a statute and one is constitutional and the other is not, we will choose the path which permits upholding the statute because we will not presume that the legislature violated the

claim to be filed until a minor's eighth birthday never took effect.

**6.** It is not clear from her brief whether Dr. Fairley would allow that such an amendment is possible. At oral argument, her counsel intimated that such would be proper. However, if the Parents had not filed their own claim within two years for something such as loss of consortium, it is questionable whether a wrongful death claim would relate back to a personal injury claim filed on behalf of the injured party. As earlier demonstrated, a

wrongful death claim is wholly separate from a claim for personal injuries brought by or on behalf of the injured party. Indeed, they are brought by different parties. Nonetheless, we need not address such because we may properly resolve the issue before us without reaching the issue of relation back. For a discussion of relation back of amendments to pleadings and substitution of parties, see Indiana Trial Rules 15 and 25, respectively.

Constitution unless such is required by the unambiguous language of the statute. *Id.* The legislature has wide latitude in determining public policy and we do not substitute our belief as to the wisdom of a particular statute for that of the legislature. *Id.* "As such, '[a] statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies.'" *Id.* Nonetheless, we are mindful of our duty as guardian of the Constitution and the requirement that judges must enforce the Constitution as written and intended. *Id.*

In *Martin,* our Supreme Court determined that the occurrence based statute of limitations present in the Medical Malpractice Act was unconstitutional as applied because the injury of which the injured party complained could not be discovered within the two years after the alleged malpractice. 711 N.E.2d at 1279. In reaching its conclusion, the Court relied upon the test announced in *Collins v. Day,* 644 N.E.2d 72 (Ind.1994), to determine whether the Medical Malpractice Act violated the Privileges and Immunities Clause of the Indiana Constitution. The Privileges and Immunities Clause provides that the "General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Indiana Const. Art 1, § 23.

In *Collins,* the Supreme Court held that Article 1, § 23 imposed two requirements upon statutes which grant unequal privileges or immunities to differing classes of persons. 644 N.E.2d at 80. "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Id.*

As to the first requirement, our Supreme Court has held that a classification scheme which distinguishes between victims of medical malpractice and victims of other torts is reasonably related to the goal of maintaining sufficient medical treatment and controlling malpractice insurance costs in Indiana, and therefore is not unreasonable.[7] *Martin,* 711 N.E.2d at 1281. In *Martin,* in concluding that the two-year occurrence based statute of limitations was unconstitutional as applied, the Court held that the statute of limitations was not "uniformly applicable" to all medical malpractice victims because some individuals could not discover the malpractice until more than two years had passed after the malpractice occurred. *Id.* Furthermore, the Court noted that the subclassification did not further the statutory goal of lowering medical costs by encouraging the prompt filing of claims because plaintiffs who are unable to discover the malpractice and their resultant injury are not empowered to file a claim at all. *Id.*

In the case before us, it is true that the Parents could have filed a negligence claim within the two years after the malpractice occurred. However, they chose not to because their son was still alive and the Medical Malpractice Act gave them until his eighth birthday to file. The position argued by Dr. Fairley and accepted by the

---

7. A panel of this court recently concluded that "the classification between minors injured by medical malpractice and minor victims of other torts is no longer reasonably related to the goal of maintaining sufficient medical treatment and controlling malpractice insurance costs." *Ledbetter v. Hunter,* 810 N.E.2d 1095, 1102 (Ind.Ct.App.2004), *trans. pending.* The analysis in *Ledbetter* is persuasive. However, we need not choose sides in that debate because the issue before us falls squarely within the second requirement announced in *Collins.*

trial court is that Dustin's death extinguished all claims. However, such a conclusion does not take into consideration that the Parents are inserting a claim which did not exist until Dustin's death to replace the claim lost by his death. While it is true that they are separate claims, it is also true that the Parents will be able to recover the medical bills which they must pay because of the alleged malpractice, just as they could have recovered in an action filed on behalf of Dustin, and should not be precluded from collecting additional damages. Moreover, nothing is gained or lost by allowing the Parents to pursue a wrongful death claim at the time in which they did. Had Dustin lived, the Parents would have had nearly six years to file a negligence complaint on his behalf. After Dustin's death, the Parents filed their proposed complaint within eight months. Thus, any fear of delay in prosecution of the claim or that the Parents were sitting on their rights was not realized.

We also must address the inconsistency between the manner in which families who have been affected by malpractice would be treated when they have a child who survives past his eighth birthday and a child who dies before his eighth birthday if we were to adopt the position of Dr. Fairley. Assume the same doctor committed the same act of malpractice when two different children were born. Both children survive past their second birthday but one dies before his eighth, just as Dustin, and the other survives past his childhood. Neither set of parents sought to prosecute a claim for malpractice before the child reached two years of age because the parents were relying upon the extended statute of limitations. By sheer happenstance, one set of parents will be able to prosecute their claim and receive compensation for the injuries to their child and resulting expenses and the other set of parents will be precluded from any recovery. Not only will that second set of parents be without their child, they will likely have exorbitant medical bills to pay for that child's treatment. One set of parents keeps their child and receives some just compensation, the other loses their child and possibly faces financial ruin. The Medical Malpractice Act cannot be read to order such a disparate treatment between similarly situated parents.[8]

Given these considerations, we hold that the Privileges and Immunities Clause prohibits a reading of the Medical Malpractice Act such that the Parents are precluded from filing a wrongful death claim in place of a negligence claim they could have filed on behalf of their son had he lived. In this case, the Parents have asked that we consider their claim timely filed because it was filed within a reasonable time after their son's death. Notably, they have not asked that we allow for the filing of a claim until the time in which

8. A second issue separate from the application of Article 1, § 23 also arises. Were we to accept Dr. Fairley's reading of the Medical Malpractice Act, we would essentially bar a claim for wrongful death upon the basis that it is filed too late *before* the claim ever came into existence. We recognize that prior decisions of this court appear to support Dr. Fairley's position. *See, e.g., Hopster v. Burgeson,* 750 N.E.2d 841 (Ind.Ct.App.2001). However, in *Martin,* our Supreme Court noted that according to Article 1, § 12 of the Indiana Constitution, "the legislature cannot deprive a person of a complete tort remedy arbitrarily and unreasonably ... and that legislation which restricts such a right must be a rational means to achieve a legitimate legislative goal." 711 N.E.2d at 1283. It is at least arguable that the Medical Malpractice Act is constitutionally infirm to the extent that it precludes any recovery for a wrongful death caused by medical malpractice. However, because we have determined upon different grounds that the Parents' claim is not barred, we do not address the merits of this issue.

Dustin would have been eight years old. Their request is in line with the import of the holding of *Martin;* in essence, a party must be given a meaningful opportunity to bring forth a medical malpractice claim. *See also Boggs,* 730 N.E.2d at 697; *Jacobs v. Manhart,* 770 N.E.2d 344, 355 (Ind.Ct. App.2002), *trans. denied.* Thus, we hold that the Parents' claim was brought within a reasonable time after Dustin's death and the trial court should not have granted summary judgment in Dr. Fairley's favor upon the ground that the Parents missed the relevant statute of limitations.[9]

The judgment is reversed. We remand to the trial court for further proceedings not inconsistent with this decision.

NAJAM, J., and BARNES, J., concur.

---

9. While it may seem that the entire period of time until a child's eighth birthday would be available to file a wrongful death claim, such may be inappropriate when the delay between filing the action and the death is several years. There are no apparent reasons why such a delay would be needed. Furthermore, the statute of limitations for a claim under the CWDS is two years. *See Guziar,* 680 N.E.2d at 555. Thus, it would seem that any claim under the CWDS would have to be filed within two years of the date of death.