**Peggy BOEHM, Gordon McIntyre, and Wanda Watts, in their official capacity as Commissioners of the Indiana State Board of Tax Commissioners, Appellants (Respondents below),**

v.

**TOWN OF ST. JOHN, et al., James K. Gilday, Dimple Clarine Shelton and William E. Wise, Appellees (Petitioners below).**

No. 49S10–9608–TA–544.

Supreme Court of Indiana.

Dec. 23, 1996.

statutory sentence is not manifestly unreasonable.

Pamela Carter, Attorney General, Jon Laramore, Marilyn S. Meighen, Office of Attorney General, Indianapolis, for Appellants.

Richard A. Waples, Indiana Civil Liberties Union, Peter H. Donahoe, Hill Fulwider Mcdowell Funk & Matthews, Thomas M. Atherton, Dutton & Overman, James K. Gilday, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, for Appellees.

ON PETITION FOR REVIEW

DICKSON, Justice.

This is an appeal from the decision of the Indiana Tax Court holding that the Indiana Constitution requires a system of property assessment and taxation based on market value and that, because Indiana's current statutory system of taxation values real property on a basis other than market value, the system is unconstitutional. *Town of St. John v. State Bd. of Tax Comm'rs,* 665 N.E.2d 965 (Ind.Tax 1996). We reverse that conclusion. Because the Tax Court did not address the taxpayers' other claims, we return this case to the Tax Court to resume its consideration and determination of those claims.

This case arises from the consolidation of several original tax appeals by the petition-

ers-appellants[1] ["taxpayers"] in the Indiana Tax Court challenging the past and future methods by which Indiana assesses the value of real property for taxation purposes. Asserting multiple issues, the taxpayers contended that the current system results in a non-uniform, unequal, unjust and discriminatory valuation and assessment of real property in violation of Article 1, Section 23 and Article 10, Section 1 of the Indiana Constitution, as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The taxpayers requested the following relief from the Tax Court: (1) declare Indiana Code Section 6–1.1–31–6(c)[2] unconstitutional if interpreted to prevent the State Board from adopting fair market value or a uniform percentage thereof as the standard of value of real property; (2) require the State Board to adopt a system of assessment that treats equally and uniformly persons who are similarly situated in terms of the fair market value of the real property they own; and (3) review and equalize the assessments and valuations within St. John and the other townships in Indiana.

The Indiana Tax Court addressed only the following issue, finding it to be dispositive: "Whether Article 10, § 1 of the Indiana Constitution requires that all real property assessments be based on [fair[3]] market value." *Town of St. John,* 665 N.E.2d at 966. Article 10, Section 1 provides, in pertinent part, "The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for

taxation of all property, both real and personal." IND. CONST., art. 10, § 1(a). The Tax Court held that "uniform and equal" mandates "each taxpayer's property wealth bear its proportion of the overall property tax burden," *Id.* at 970, "that 'just value' means market value," *Id.* at 973, and that the legislature and the State Board must implement fair market value and "bring the state's system of real property taxation into compliance with Article 10, § 1 of the Indiana Constitution" by March 1, 1998. *Id.* at 975.

■ The State Board now appeals the judgment of the Tax Court. Decisions of the Indiana Tax Court are appealed to this Court by filing a petition for review pursuant to Appellate Rule 18, which is significantly different from the process by which this Court reviews decisions of the Court of Appeals upon a petition for transfer, as prescribed by Appellate Rule 11. Our grant of transfer from the Court of Appeals generally operates to vacate the decision of the Court of Appeals and we thereafter consider "all issues therein as if originally filed" in this Court, Ind. App.R. 11(B)(3). However, when we grant review of a decision of the Tax Court, we construe our rule to provide that we address only the issues presented in the petition for review, and that the Tax Court decision is not automatically vacated but rather modified only to the extent determined in our subsequent opinion resolving the issues presented. To the extent that the State Board's petition for review alleges Tax Court error, it presents the following claims:[4]

---

1. The consolidated petitioners include three individually named taxpayers and a certified class of taxpayers who own real estate in the Town of St. John/St. John Township and appealed their individual property assessments for 1989.

2. Assessment of real property in Indiana is based on an assigned value which the State has named "true tax value." As summarized by the Tax Court, "true tax value" is "a figure which is produced by the application of the State Board's mechanical rules and formulas set forth in Title 50." *Town of St. John,* 665 N.E.2d at 967. The Indiana Code provides that "true tax value does not mean fair market value. True tax value is the value determined under the rules of the state board of tax commissioners." IND.CODE § 6–1.1–31–6(c). In this opinion, we will refrain from using "true tax value" as a synonym for assessed value or to identify the present system of real property assessment in order to avoid the implication that it is a term of description.

3. The Tax Court used the terms "fair market value" and "market value" interchangeably. *Town of St. John,* 665 N.E.2d at 967, fn. 2.

4. In its appellant's brief, the State Board asks this Court to dismiss one of the parties, the Town of St. John, for lack of standing. Indiana Appellate Rule 18 governs what issues are before this Court when reviewing decisions of the Tax Court. The rules requires that the petition for review "specify with particularity wherein the Tax Court committed error and the circumstances giving rise to such error." Ind.Appellate Rule 18(D)(1)(d). The State Board did not present this issue in its petition for review to this Court, nor in its Brief in Support of the Petition for Review, and thus review was not granted to address this issue. Consequently, we will not disturb the Tax Court's finding, in *Bielski v. Zorn,* 627 N.E.2d 880 (Ind.Tax 1994), that the Town of St. John has standing in this cause of action.

1. The Tax Court should have deferred to the legislature's policy judgments because Article 10, Section 1, delegates the property tax system to the discretion of the General Assembly.

2. The Tax Court erroneously decided that Article 10, Section 1, requires that real property to be assessed solely according to fair market value.

3. The Tax Court improperly set an arbitrary date for the State to implement a new system of assessment based on fair market value.

When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well-established. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992); *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind.1992); *Eddy v. McGinnis*, 523 N.E.2d 737, 738 (Ind. 1988); *Miller v. State*, 517 N.E.2d 64, 71 (Ind.1987). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute. *Price v. State*, 622 N.E.2d 954, 963 (Ind.1993); *Smith v. Indianapolis St. Ry. Co.*, 158 Ind. 425, 427–28, 63 N.E. 849, 850 (1902).

Questions arising under the Indiana Constitution are to be resolved by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Ind. Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 298 (Ind.1994). *See also Price*, 622 N.E.2d at 957; *Collins v. Day*, 644 N.E.2d 72, 76 (Ind.1994); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 412 (Ind.1991), *cert. denied*, 502 U.S. 1094; 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992); *State Election Bd. v. Bayh*, 521 N.E.2d 1313 (Ind.1988). In construing the constitution "a court should look to the history of the times, and examine the state of things existing when the constitution or any part thereof was framed and adopted, to ascertain the old law, the mischief, and the remedy." *Sonnenburg*, 573 N.E.2d at 412 (citing *State v. Gibson*, 36 Ind. 389, 391 (1871)). Because the "intent of the framers of the Constitution is paramount in determining the meaning of a provision," *Eakin v. State ex rel. Capital*, 474 N.E.2d 62, 64 (Ind.1985), this Court will consider "the purpose which induced the adoption," *id.* at 65, "in order that we may ascertain what the particular constitutional provision was designed to prevent." *Northern Ind. Bank and Trust Co. v. State Bd. of Fin. of Ind.*, 457 N.E.2d 527, 529 (Ind.1983).

### 1. Extent of Legislative Discretion Authorized

The State Board argues that Article 10, Section 1, commits the design of a property taxation system to the legislative branch and imposes no judicially-manageable standards permitting adequate review of the legislative choices involved. It contends that courts must defer to legislative judgment in matters of competing policy goals properly within the legislative purview.

This Court reviews the constitutionality of statutes with the understanding that "[t]he legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature." *Rendleman*, 603 N.E.2d at 1334. As such, "[a] statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies." *Id.* Nevertheless, we are also mindful of "our role as guardian of the constitution," *Bunker v. Nat'l Gypsum*, 441 N.E.2d 8, 11 (Ind.1982), and the requirement that "[j]udges must enforce the Constitution as written and intended." *Bd. of Trustees of Pub. Employees' Retirement Fund of Ind. v. Pearson*, 459 N.E.2d 715, 717 (Ind.1984). Consequently, "[w]here a law or the application of a law is challenged on constitutional grounds, the judiciary has the authority, as well as the duty, to explore the constitutional ramifications of the law." *City of Anderson v. Assoc. Furniture and Appliances, Inc.*, 423 N.E.2d 293, 295 (Ind.1981).

Cautious of this balance between the court as "guardian of the constitution" and the General Assembly as policy-makers, we have stated:

In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a 'supreme legislature.'

*Bunker*, 441 N.E.2d at 11. However, it is equally important that we observe Justice DeBruler's admonition that, "[w]hile this Court respects the separation of powers, we do not permit excessive formalism to prevent necessary judicial involvement. Where an actual controversy exists we will not shirk our duty to resolve it." *Ind. Dep't of Environmental Management v. Chemical Waste Management, Inc.*, 643 N.E.2d 331, 337 (Ind. 1994).

■ Thus, while courts must not interfere with the General Assembly's proper exercise of its constitutional prerogative to determine public policy and to enact legislation in furtherance thereof, the judiciary is obligated to enforce our state constitution's provisions regarding legislative action. In the discharge of our constitutional obligations, we may be required to determine whether such legislative action is constitutionally valid.

Examining the constitution in the context of the history surrounding its drafting and ratification, we find that the substance of Article 10, Section 1 was proposed at the constitutional debates by Delegate Daniel Read of Monroe County on December 3, 1850. He stated:

[N]o provisions are more proper for a Constitution, than those requiring equality of assessment for purposes of taxation. The duty of the Legislature to devise a system which will secure such equality and which will cause all the property of the State to be brought under taxation, should be held forth in the Constitution.

Comments of Delegate Read (Dec. 3, 1850), *in* 1 REPORT OF THE DEBATES AND PROCEEDINGS OF THE CONVENTION FOR THE REVISION OF THE CONSTITUTION OF THE STATE OF INDIANA, 941 (Indiana Historical Collections Reprint,

1935). Many of his comments at the convention illustrate the sentiments surrounding this issue at the time our constitution was adopted:

I have noticed that the Governors of our State in the annual messages for a number of years past, have called the attention of the Legislature, and the people of the State at large, to the great inequality of assessment and taxation as existing under our laws. In many parts of the State the subject has excited much attention.... There is manifest injustice in permitting property in the hands of the wealthy ... to be taxed only on a very small part of its value.

*Id.* at 946. Another commentator, after analyzing materials documenting the conditions at the time of the adoption of our new constitution, noted that there was much dissatisfaction in Indiana in relation to the tax laws. William Wright, *Problems in Indiana Taxation* at 24 (1915) (Master's thesis, Earlham College) (on file with the Indiana Historical Society Collections). After reviewing and comparing the Indiana Auditor's Reports from 1845, 1847, 1851, and 1852; the Indiana Governor's Messages of 1838 and 1840; the Indiana House Journals from 1838, 1840, 1848, and 1850; the laws of 1840 and 1851; the Journals of the Constitutional Convention; the Debates of the Constitutional Convention; and the First Indiana Tax Conference of 1914, he observed that "[t]here was no uniformity between districts nor within the districts," and that "[p]roperty was in most cases assessed at a mere fraction of its value," concluding "[i]t was such a situation that the framers of the Constitution of 1850 wished to remedy." *Id.*

The statements of delegates at the constitutional convention similarly illustrate the "mischief" the framers were seeking to remedy with Article 10, Section 1, as the delegates provided examples of exactly "how unjust has been the operation of the present system of taxation." Comments of Delegate Borden (Dec. 4, 1850), *in* 1 REPORT OF THE DEBATES AND PROCEEDINGS, 950. Offering the following example, Borden related his knowledge of a Madison estate that had been taxed at sixty thousand dollars during the owner's lifetime. However, upon his death, the same estate was "appraised at its real cash value,

and was valued at something like three hundred thousand dollars." *Id.* He then offered another example of an estate which "had been taxed only to the amount of a hundred thousand dollars, when the estate, upon [the owner's] decease, was found to be really worth between four and five hundred thousand dollars." *Id.* Daniel Read emphasized "[t]here is manifest injustice in permitting property, in the hands of the wealthy, which ought to be taxed as other property, to escape taxation altogether, or to be taxed only on a very small part of its value." Comments of Delegate Read (Dec. 4, 1850), *in* 1 REPORT OF THE DEBATES AND PROCEEDINGS, 946. He expressed astonishment to discover that "[u]pon examining the Auditor's duplicate in my own county, I noticed farms which were of equal value assessed at a difference of fifty perc., and farms of less value than other farms, assessed at a much higher rate." *Id.*

It is apparent from Read's remarks at the convention that the purpose and intent of Article 10, Section 1, was to specifically require uniform and equal assessment and taxation, and just valuation. Including such requirements in the constitution elevated and preserved their importance as fundamental principles. However, at the same time, he acknowledged the aspirational nature of such language, implying that he did not expect the full achievement of absolute and precise exactitude. He stated:

> I do not suppose, sir, that these inequities can be corrected by the Constitution, nor even wholly by the laws. But I would lay down the rule in the Constitution. It will be in the minds of the people. It will be before the Legislature. It will strengthen those who wish to secure a system of just and equal taxation. The rule will be a part

of the organic law, and the people and the Legislature will endeavor to work up to a rule so manifestly just and equitable. If the rights of society are to be equal—if men are to stand upon the same platform—if none are to enjoy special privileges or exemptions which others do not enjoy, let the rule requiring it go into the Constitution. Whatever else we omit, let us not omit a principle so fundamental in its character, and lying at the very foundation of free government.

*Id.*

An argument similar to that urged by the State Board in the present case was presented during the convention debates by Delegate Stevenson, who preferred "leaving the whole subject of taxation to the Legislature." Comments of Delegate Stevenson (Dec. 4, 1850), *in* 1 REPORT OF THE DEBATES AND PROCEEDINGS, 947. Stevenson opposed Read's proposal, and argued that the general provision found in the Wisconsin Constitution, "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the Legislature shall prescribe," was sufficient to embrace all that should be included in the Indiana Constitution. *Id.* at 948. This view, however, did not prevail, and Article 10, Section 1, was adopted, almost exactly as originally proposed by Read.

The purpose and intent of Article 10, Section 1, was reviewed just fifteen years later in *Bright v. McCullough*, 27 Ind. 223 (1866), which explained that "[t]he constitutional provision under consideration is a restriction upon the otherwise discretionary powers of the legislature, and prescribes the rule for its government in authorizing the levy of taxes, and it must be governed by that rule...." *Id.* at 232.[5]

---

5. We further note that, sixty years after the constitution was adopted, the intent of the framers remained manifest in Indiana. In 1913, Senator Stotsenburg proposed that Article 10, Section 1, of the Indiana Constitution be amended to eliminate the words "uniform and equal" from the constitution and to allow the General Assembly to classify different kinds of property and to provide for a different manner and basis of assessment and rate of taxation for each class. In his message to the General Assembly opposing this portion of the amendment, Governor Ralston stated:

> Much discussion has taken place in this State during the past two years, as to the importance

of amending Section 1 of Article 10 of our State Constitution, which fixes the basis for taxation in Indiana.... [Article 10, Section 1] provides for a system of taxation that is "uniform and equal." I like these words. They appeal to man's innate sense of justice, and it would seem that they should have a permanent place in a government founded in a love for justice, and especially it seems they are most appropriate on which to rest that greatest function of government, the power to lay and collect taxes.

> ....

> Under this provision of the proposed amendment there is nothing to prevent a legislature

The language of Article 10, Section 1, along with the circumstances of its adoption at the Constitutional Convention, clearly demonstrate that the framers did not intend to give the legislature unrestrained discretion as to the laws of assessment and taxation. The foundational requirement of uniform and equal assessment and taxation is not diminished by the language delegating to the General Assembly the responsibility "to prescribe regulations to secure a just valuation for taxation of all property." Article 10, Section 1, does not immunize legislative policy judgments from judicial oversight, but rather establishes mandatory minimum requirements for our system of property assessment and taxation. The Tax Court did not err in undertaking to determine if Indiana's system of real property assessment complies with the constitutional prerequisites.

### 2. Fair Market Value Assessment

Having determined that legislative discretion to prescribe regulations securing just valuation is limited by the constitutional requirement for a uniform and equal rate of property assessment and taxation, subject to judicial review, we now turn to the appellant's second claim of Tax Court error. The State Board disputes the Tax Court's conclusion that Article 10, Section 1, requires Indiana's system of real property assessment and taxation to "be based on a system which uses market value as the measure of equality and uniformity." *Town of St. John*, 665 N.E.2d at 974.

From our examination of the constitutional language in the context of the history surrounding its drafting and ratification, we believe that the Tax Court was correct in its preliminary determination that:

[W]hen Article 10, § 1 was adopted and later ratified as part of the 1851 Indiana Constitution, the Indiana property tax was intended to be a tax on property wealth. Thus, the great object of Article 10, § 1 was to ensure that property taxes were imposed on all forms of property wealth *equally* and *uniformly*. In other words, the framers of Article 10, § 1 intended that each taxpayer's property wealth bear its proportion of the overall property tax burden.

665 N.E.2d at 970 (emphasis in original). Accurately noting "that the framers never explicitly stated that real property was to be assessed on the basis of its market value," the Tax Court acknowledged that it was "left with no direct indication as to what they intended the 'just value' of property to be." *Town of St. John*, 665 N.E.2d at 970. However, in reviewing subsequent court decisions and legislation interpreting and implementing Article 10, Section 1, the Tax Court was persuaded to conclude that property must be assessed solely according to market value. The State Board argues that neither the language nor the history of the state constitution requires a system based on fair market value.

In reaching its conclusion "that 'just value' means market value," *Town of St. John* 665 N.E.2d at 973, the Tax Court places substantial reliance upon *Bright*, an 1866 decision of this Court, from which the Tax Court opines that "there was one, and only one, standard by which property wealth was to be measured—its 'just value.'" *Town of St. John*, 665 N.E.2d at 970. In *Bright*, a taxpayer claimed that a tax for township road purposes, based on a fixed amount per acre, violated Article 10, Section 1, because it was not levied at a given percent of the property's appraised value. The appellee township trustees did not dispute the claim as to taxes levied exclusively for state purposes, but as-

---

from assessing bank stock and brewery stock at fifty cents on the dollar of its true value and the grain and herds of the farm at their full true value. Every legislature would be besieged to lower the rate on certain classes of property and to raise it on others, and at every session of our General Assembly there would be an alignment of interests for a new classification and a "different manner and basis of assessment and taxation," not unlike the coun-

try witnesses at every revision of the tariff, with the result that often the victory would be with the strong.

Speech of Governor Ralston (Jan. 7, 1915), *in* 2 CONSTITUTION MAKING IN INDIANA 1851–1916, § 532, at 588 (Charles Kettleborough, 1975). Senator Stotsenburg's resolution proposing the amendment of Article 10, Section 1, was rejected by the Indiana Senate.

serted that the constitutional provision did not apply to prohibit county and township taxes from being fixed and specific. In the course of addressing the question presented, this Court summarized:

> Taxes are public burdens, which should be borne by all, and it was evidently the object of the convention, in the adoption of this and other provisions of the constitution, to devise a system for the assessment and levy of taxes that would distribute these burdens, among those liable to them, upon principles of uniformity, equality, and justice. To this end the primary principle adopted is that taxes shall be assessed on the property liable thereto, according to its just value, and by a uniform and equal rate.

*Bright,* 27 Ind. at 230. The holding in *Bright* was simply that the provisions of Article 10, Section 1, apply "whether the levy be for the state at large or for a minor subdivision." *Id.* at 232. As the issue was not before it, the court did not decide whether tax assessments must be based solely upon appraised value.

In *Florer v. Sheridan,* 137 Ind. 28, 36 N.E. 365 (1894), another case emphasized by the Tax Court, the issue was *not* whether Article 10, Section 1, required a fair market value rate of assessment and taxation. *Florer* was an action on behalf of the estate of a deceased taxpayer against the county treasurer and auditor to prevent the collection of taxes from the property of the decedent. The estate's claim was that the taxes had been erroneously assessed upon certain credits without deduction for debts related thereto, with "proper valuation" as prescribed by the then-existing statute. The treasurer and auditor argued that the statute violated the uniformity provisions of Article 10, Section 1, primarily because of the potential inconsistencies in the type of debt that a taxpayer may claim. The *Florer* court upheld the statutory provision permitting a taxpayer's credits to be offset by the creditor's debts to the taxpayer. "The judicial tribunals have no concern with the prudence or wisdom of legislation not inconsistent with organic law." *Id.* at 38, 36 N.E. at 368. Although the court did not face any question regarding whether

the property should be assessed on a fair market value basis, it generally stated, "[w]e think the constitution requires that property, wealth, substantial values shall be taxed, but not imaginary values." *Id.* at 42, 36 N.E. at 369.

In 1893, two parallel cases presented the question whether Article 10, Section 1, was violated by statutory provisions under which some property was assessed by local assessors, whereas other property was assessed by a state board. Upholding the legislation, both opinions included identical language:

> The first clause of [Article 10, Section 1] is certainly complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation; that is to say, there is uniformity and equality of assessment and taxation when all the property is to be assessed at its true cash value, and the same rate is fixed on all property subject to assessment for the tax.... The law under consideration is not subject to objection on account of inequality in rate of assessment of taxation, for it "provides that all property shall be assessed at its true cash value, and the rates are the same within the respective taxing districts," and no objection is urged to the law on this account.
>
> As to the latter clause of [Article 10, Section 1] providing that the General Assembly "shall prescribe such regulations as shall secure a just valuation for taxation," it leaves it to the Legislature to prescribe the mode by which the valuation of all property shall be ascertained, enjoining upon them the one obligation to provide such regulations as shall secure a just valuation.... There is certainly no reason why the Legislature may not, under the Constitution of the State, provide for fixing the value of "railroad track" and "rolling stock" of railway companies, by the State Board of Tax Commissioners, while other property is assessed by local boards. The value is ascertained according to regulations prescribed by the Legislature, and we are unable to see any reason why a valuation secured in that way should not be a just valuation.

*Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus*, 133 Ind. 513, 535–36, 33 N.E. 421, 428 (1893); *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus*, 133 Ind. 625, 647–48, 33 N.E. 432, 439 (1893). As in *Bright* and *Florer*, these opinions do not address the issue of whether the Indiana Constitution requires assessment to be based solely on fair market value.

The same is true in *Fesler v. Bosson*, 189 Ind. 484, 128 N.E. 145 (1920), which recited the following summary:

> [T]hree basic propositions stand out in bold relief: (1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just value for taxation. Each of these propositions are interlocking and mandatory. They are the constitutional basis of a valid tax law.

*Id.* at 492, 128 N.E. at 147. However, the question presented in *Fesler* was only whether the state board of tax commissioners, in issuing a certain order, acted within legislative authorization. There was no issue of constitutional interpretation. *Id.* at 491, 128 N.E. at 147.

In numerous other cases decided since the adoption of our 1851 Constitution, we find discussions regarding the requirement that assessments be based upon actual, true, fair cash, or market value. These cases do not actually involve enforcement of Article 10,

Section 1, but rather the application of existing statutes providing for methods of assessment and taxation substantially equivalent to fair market value, as this was the principal standard for assessment provided by statute until 1984.[6]

For example, in *Willis v. Crowder*, 134 Ind. 515, 34 N.E. 315 (1893), the court stated "[i]t is manifest that the taxable value of property is its fair cash value, a fair cash value being the market or usual selling price, and if there is no market value, then it is the actual value that rules." *Id.* at 517, 34 N.E. at 316. However, by such language the court was merely construing a then-existing statutory requirement for "fair cash value" assessment rather than interpreting the requirements of Article 10, Section 1. *See also, e.g., Davis v. Sexton*, 210 Ind. 138, 200 N.E. 233 (1936); *Miles v. Dep't of Treasury*, 209 Ind. 172, 199 N.E. 372 (1935); *Smith v. Stephens*, 173 Ind. 564, 91 N.E. 167 (1910).

This was likewise true in *Wright v. Steers*, 242 Ind. 582, 179 N.E.2d 721 (1962), wherein this Court reviewed a motor vehicle tax rate which was not equal to the rate of taxation for other property, finding in part that "it does not meet the requirement that the rate of taxation shall be uniform and equal on all property." *Id.* at 586, 179 N.E.2d at 724. As in the cases discussed above, the issue was not whether the assessment was re-

---

6. *See* 1852 IND. ACTS CH. VII, §§ 49, 57 (providing that the appraiser "make a true valuation of all lands, together with the improvements and buildings thereon, at their full money value …"); 1873 IND. ACTS CH. XXXVII, §§ 13, 111 (providing that real property be valued "at its fair cash value, estimated at the price it would bring at a fair, voluntary sale for cash"); 1881 IND. ACTS CH. XCVI, §§ 111, 62, 119 (providing that the property owner "affix what he deems the fair cash value thereof to each item of personal property for the guidance of such Assessor who shall determine and settle the value of each item, after examination of such statement…. In determining and settling such valuation, he shall be governed by what is the fair cash value, such being the market or usual selling price at the place where the property shall be at the time of its liability to assessment, and if there is no market value, then the actual value"); 1891 IND. ACTS CH XCIX, §§ 95, 48, 53 (providing that real property be valued "at their full, true cash value, estimated at the price they would bring at a fair, voluntary private sale, not a forced or Sheriff's sale …"); 1903 IND. ACTS CH. XXIX, §§ 7, 32 (provid-

ing that the words "value," cash value," "true value," or "valuation," "shall be held to mean the usual selling price at the place where the property to which such term or terms are applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at force or auction sale"); 1919 IND. ACTS CH. 59, §§ 61, 57 (providing that "in determining the true cash value he may consider the market or usual selling price or the earning capacity of such property and all other facts and circumstances which may give any information concerning the true cash value"); 1937 IND. ACTS CH. 19, § 3 (providing that "all officials whose duty it is to assess or review the assessment of property for taxation shall take into consideration all of the following elements insofar as the same shall be applicable: (a) the true cash value; (b) the normal earning capacity under conditions of average efficiency of operation of property of like kind and character, similarly located; (c) the replacement cost less proper depreciation; (d) voluntary sales, if any, of similar property in the same vicinity; and (e) the prospective value of such property, if any").

quired to be based solely on market value. We understand *Wright* to hold not that our constitution requires all property taxes to be *ad valorem*, but rather that the legislation therein challenged, which prescribed *ad valorem* property taxes, was unconstitutional because it failed to tax motor vehicles at a rate equal and uniform to other property.

The second clause of Article 10, Section 1, requiring the General Assembly to "prescribe regulations to secure a just valuation for taxation of all property," has been interpreted to authorize substantial, but not unlimited, legislative discretion in the methods utilized to achieve the standards of uniformity and equality of rates of assessment and taxation.

This Court in *Louisville and N.A.R.R. Co. v. State ex rel. McCarty*, 25 Ind. 177 (1865), upheld a special statutory method for appraising the real estate of railroad companies, finding that "the constitution does not require a uniform method of valuation of property," only regulations that are just. *Id.* at 180. The court observed that while the "elements that make up the value of a railroad are not identical with those that give value to other property, ... an intelligent appraiser would naturally give weight to all these things in making an estimate of the value of the railroad." *Id.* The court did not hold that the rates of assessment and taxation did not have to be uniform and equal, merely that the varying methods of valuation could be used, so long as they achieved a just valuation. As we previously noted, the language in the *Cleveland* and *Pittsburgh* cases would permit the legislature to prescribe the "mode of ascertaining the valuation." *Cleveland*, 133 Ind. at 536, 33 N.E. at 428; *Pittsburgh*, 133 Ind. at 647, 33 N.E. at 439. Similarly, in *Bd. of Comm'rs of Johnson County v. Johnson*, 173 Ind. 76, 89 N.E. 590 (1909), we recognized that, although perfect uniformity in the method of assessment is not required, the constitution "does require a just valuation of all property, so that the burdens may be distributed with uniformity. That is a legislative function. It does require a rate that is uniform and equal." 173 Ind. at 92, 89 N.E. at 596.

Legislative discretion to devise methods of valuation, however, is subject to judicial oversight. In *Finney v. Johnson*, 242 Ind. 465, 179 N.E.2d 718 (1962), this Court was not concerned with any question as to uniform and equal rate of assessment or taxation. Rather, this Court held that the second clause of Article 10, Section 1—requiring that the valuation be just on all property— was violated by a statute providing that household goods be assessed, by formula, at an amount equal to five per cent of the assessed valuation of the improvements in which the goods were kept. It was held that, "between those petitioning for a reassessment and those under-assessed" there would be no "just" valuation of all property. *Id.* at 471, 179 N.E.2d at 720.

From our review of past decisions we are unable to affirm the Tax Court's conclusion that an assessment system based solely on actual market value is compelled by the "uniform and equal" clause of Article 10, Section 1. Clearly, past decisions have unequivocally recognized that fair market value (or its substantial equivalent), as a method or mode of valuation, satisfies the constitution's requirement for uniformity, equality, and just valuation. While a careful and accurate fair market value assessment may well be the system closest to our constitution's requirements for uniform and equal rates of assessment and taxation and for just valuation, a system based solely upon strict fair market value is not expressly required either by the text of the constitution, by the purpose and intent of its framers, or by the subsequent case law. We do not agree with the Tax Court's conclusion that decisions since the adoption of Article 10, Section 1, "implicitly acknowledge that the terms [just value and market value] are equivalent." *Town of St. John*, 665 N.E.2d at 971.

Seeking to ensure that each taxpayer's property wealth bear its proportion of the overall property tax burden, the Indiana Constitution requires that our property tax system achieve substantially uniform and equal rates of property assessment and taxation and authorizes the legislature to allow a variety of methods to secure such just valuation.

### 3. Implementation Deadline

In its petition for review, the State Board also challenges the arbitrary date set by Tax Court by which the State must devise and implement a new system of assessment based on fair market value. Because we disagree with Tax Court's determination that the current system is unconstitutional for failing to be based solely on a fair market value assessment system, this case must now be returned to the Tax Court to address the remaining and unresolved contentions of the taxpayers that the current system results in a non-uniform, unequal, unjust and discriminatory valuation and assessment of real property. The necessity of these further proceedings requires vacating the deadline established by the Tax Court.

### Conclusion

In response to the claims of error presented in this appeal, which are the sole issues before this Court, we have determined that legislative discretion to prescribe regulations to secure just valuation is limited by the constitutional requirement for a uniform and equal rate of property assessment and taxation, compliance with which is subject to judicial review.

To the extent that the Tax Court finds that the Indiana Constitution requires an exclusive, comprehensive, absolute, and precise fair market value system, we disagree and vacate its declaration that Indiana's current system of property taxation is unconstitutional. However, we affirm the Tax Court's finding that the General Assembly must provide for a uniform and equal rate of property assessment and taxation based on property wealth. If, and to the extent that, components of the present system are found on remand to violate these requirements, they cannot stand.

We vacate the Tax Court's declaration that gives the Indiana legislature and the State Board "until March 1, 1998, to bring the state's system of real property taxation into compliance" with Article 10, Section 1, of the Indiana Constitution, and we return the case to the Tax Court to resume its consideration and determination of the taxpayers' claims and requested relief in accordance with the foregoing opinion.

The Tax Court is affirmed in part and reversed in part. This case is remanded to the Tax Court for further proceedings consistent with this opinion.

SULLIVAN and SELBY, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

BOEHM, J., not participating.

SHEPARD, Chief Justice, dissenting.

My colleagues say that Article X, section 1, constricts the General Assembly in providing for taxation of property and that questions arising under the statutes the legislature enacts for this purpose are justiciable. They proceed to say a great deal about what Article X does not require, saying in particular that it does not require a system based on assessment of actual market value. As the submissions by the parties indicate, there are only three recognized methods by which value is estimated in the world of real estate: reproduction cost, comparison of sales, and income capitalization. By declaring that using these market values is permitted but not required, I think the Court treats Article X as a dead letter. After all, if Article X creates justiciable constraints on assessment and taxation, what might those constraints be in the absence of any comparison of market prices?

Delegate Borden certainly understood that a system assessing properties at rates different than their market values was a problem Article X should solve. His comments to the Constitutional Convention, cited by the majority, constituted complaints about assessing an estate at $60,000 when it was actually worth $300,000. Op. at 322. In much the same vein, Delegate Daniel Read, also cited by my colleagues, complained that "farms which were of equal value assessed at a difference of fifty perc., and farms of less value than other farms, assessed at a much higher rate." Id.

The essence of these statements is that things should not be assessed for tax purposes at values which differ from their value

in the open market. The Court says that the Constitution does not require market value assessment, only "uniform and equal" assessment and taxation.[7] I say, uniform and equal with respect to what? If market value is not the constitutional touchstone, how would a court ever determine that any system of taxation violated Article X? A system that levied exactly the same tax on every house in the state would be uniform and equal, to be sure. I think it would also be a surprise to Delegates Borden and Read that such a system complied with the constitutional provision they urged upon the Constitutional Convention. Given the irrelevance of market value, how could such a system not comply with Article X?

The error of this approach is illustrated, I think, by the Court's treatment of *Bright v. McCullough*, 27 Ind. 223 (1866). The majority says that *Bright* "did not decide whether tax assessments must be based solely on assessed value." Op. at 325. I note that most of the opinion in *Bright* is consumed with discussion about the need to use market value in assessing taxes on land and concludes by declaring that a tax setting a single rate per acre is "unconstitutional and void." *Bright*, 27 Ind. at 233. I do not see how this can be called anything but an adjudication on the merits.

The Tax Court held that Article X actually means something. This Court basically says it does not. I stand with the Tax Court.

---

**7.** I conclude that "uniform and equal" is the rule of Article X, section 1. The second clause, "just valuation," I take simply to confer on the legislature the power to carry out the "uniform and equal" clause. This is the teaching of the *Cleveland* and *Pittsburgh* cases. The majority and I appear to agree on this point. Op. at 327.