## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 25 2015, 10:13 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Abigail Seif
Epstein, Cohen, Seif & Porter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kristin Garn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

K.L.,

*Appellant-Defendant,*

v.

Review Board of the Indiana Department of Workforce Development and Indiana University Health

*Appellee-Plaintiff*

August 25, 2015

Court of Appeals Case No. 93A02-1409-EX-682

Appeal from the Review Board of the Department of Workforce Development

Steven F. Bier, Chairperson

George H. Baker, Member

Lawrence A. Dailey, Member

Cause No. 14-R-01546

**Friedlander, Judge.**

[1]     K.L. appeals from the decision of the Review Board of the Indiana Department of Workforce Development (the Review Board) denying her application for unemployment benefits. K.L. presents four issues for our review, which we consolidate and restate as:

> 1. Whether the Review Board applied the appropriate standard in evaluating the evidence?
>
> 2. Whether enactment of Ind. Code Ann. § 22-4-1-2 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation), which redefined the burden-shifting framework previously applied in making determinations as to unemployment benefits, violates an applicant's due process rights?
>
> 3. Whether the Review Board properly concluded that K.L. was terminated for just cause and therefore was ineligible for unemployment benefits?

[2]     We affirm.

[3]     K.L. was employed by Indiana University Health (IU Health) in Indianapolis from October 11, 2010 until May 20, 2014. At the time of her termination, K.L.'s job title was Strategic Value Analyst. The Director of Contracting and Value Analysis for IU Health, Linda York, cited K.L.'s failure to meet deadlines, to use critical thinking abilities, and her overall inability to perform the functions of the job as reasons for her termination. After her termination, K.L. sought unemployment benefits. On June 30, 2014, a claims deputy with the Indiana Department of Workforce Development determined that K.L. was not discharged for just cause and therefore was eligible for unemployment benefits. On July 10, 2014, IU Health appealed the claims deputy's determination. An Administrative Law Judge (ALJ) conducted an evidentiary

hearing on July 30, 2014, at which K.L., York, and Stacey Slott, a Team Leader with IU Health, testified.

[4] On August 1, 2014, the ALJ issued a decision. The facts as determined by the ALJ and subsequently adopted by the Review Board are as follows:

> The claimant began work with the employer on October 11, 2010. The claimant was transferred to the contracting department in January 2013. The claimant's job title was strategic value analyst and she was a full time salaried employee. The claimant was discharged on May 20, 2014.
>
> When the claimant came to the new department, Ms. Slott continually repeatedly trained the claimant on the programs and procedures for the department. The claimant's responsibility was to do cost analysis information for supplies, negotiate contracts and keep track of this information. The employer works with hospitals. For example if the hospitals needed more ID bracelets, it was the claimant's obligation to gather the information, obtain quotes from vendors and negotiate the contact and the pricing. The employer became increasingly concerned regarding the claimant's performance in January, 2014. By this time, the claimant had been relieved of her duties of her old job, but was still not performing her new job duties adequately. The employer was receiving complaints that the claimant was repeatedly requesting the same information, not following instructions and failing to follow up on information.
>
> Ms. Slott began to have one-on-ones with the claimant to discuss her performance. Ms. Slott testified and the Administrative Law Judge finds, that the claimant's attitude improved but she continued to fail to follow up on her items and to get work done. She would repeatedly not meet deadlines or utilize tools that Ms. Slott had made available to her. In April 2014, the employer sent the claimant an[] email requesting that she set out timelines for completing some work that the employer was concerned about. This included a project involving batteries. However, the claimant never read the email even if she had admits [sic] receiving it from her supervisor. The employer met with the claimant to discuss the timelines on April 24th. At that time, the claimant admitted she had not read the email and had not drafted any

timelines. The employer was concerned by this and gave the claimant a warning. The claimant was warned that she was given until May 2 to draft a timeline and deadlines for her work assignments. The claimant was also spoken to about using appropriate procedures and initiative.

On May 2nd, the claimant presented her timelines. However, the timelines failed to follow procedures the employer utilizes for their work. It did not include any deadlines. The claimant was given a continued performance improvement plan on May 5, 2014 regarding these concerns. The employer was concerned that the timelines did not include any deadlines. The employer also expressed concerns about the claimant's continued lack of understanding the processes despite multiple training sessions and the claimant had repeatedly signed off admitting that she understood the information. She did not understand the process of initiatives and continued to have vendor complaints. For example, the claimant had failed to use forms and information on proper procedures found on the F drive. The claimant alleged she was never told of these documents on the F drive. However, the claimant had been repeatedly trained on them and signed off, acknowledging having been trained on them. The expectations for improvement included that the claimant needed to meet deadlines immediately, demonstrate the ability to correct price discrepancies and to provide project plans for ongoing initiatives. On May 6, 2014, the employer sent a follow up email, with the claimant's timelines attached, reminding the claimant that "it is the expectation that you will have all of the initiatives listed well under way with clear progress or completion" within the next two weeks. On May 20th, the employer met with the claimant again. The claimant had not completed the projects. The claimant continued to fail to utilize the appropriate steps and procedures for completing work. The claimant was discharged.

The claimant argued at the hearing that her poor performance was caused by lack of training or other employee's errors. For example, she claims she was never told of forms and procedures available on the F drive. However, the employer testified and the Administrative Law Judge finds that the claimant was repeatedly trained on them and signed off that she knew and understood the procedures. The claimant blamed other employees for giving her poor information. However, the employer noted that one of the claimant's job duties is to manage

her timeline and making sure she's obtaining correct and timely information. The claimant argues that she had shown improvement between the May 5th and the May 20th discharge. However, the employer testified and the Administrative Law Judge finds, that the claimant continued to fail to understand procedures, follow initiatives and complete work in a timely manner.

*Appellee's Appendix* at 2-3. Based on these findings, the ALJ concluded that K.L. was terminated for just cause[1] and therefore was ineligible for unemployment benefits. K.L. appealed the ALJ's decision to the Review Board. On August 29, 2014, the Review Board issued its decision in which it affirmed and adopted as its own the decision previously rendered by the ALJ. K.L. now appeals.

1.

K.L. argues that the Review Board did not properly apply the law with regard to burden of proof. Specifically, K.L. asserts that the Review Board erred by retroactively applying I.C. § 22-4-1-2(c), which provision redefined the burden-shifting framework that had been previously articulated in case law by reviewing courts such that now both parties are required to present their evidence as to whether termination was for just cause and a decision is to be made thereon "without regard to a burden of proof."

---

[1] Reading the ALJ's conclusions in total, it is clear that the ALJ, and ultimately the Review Board, determined that K.L. was discharged for "just cause" because she breached a duty "in connection with work which is reasonably owed an employer by an employee." *Appellee's Appendix* at 4; *see also* Ind. Code Ann. § 22-4-15-1 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation) ("[d]ischarge for just cause . . . is . . . any breach of duty in connection with work which is reasonably owed an employer by an employee").

A general rule of statutory construction is that unless there are strong and compelling reasons, statutes will not be applied retroactively. *See Holding Co. v. Mitchell*, 589 N.E.2d 217 (Ind. 1992); *Chestnut v. Roof*, 665 N.E.2d 7 (Ind. Ct. App. 1996). In other words, a statute will be applied prospectively in the absence of an express statement by the legislature that it be applied retroactively. *Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind., Inc.*, 604 N.E.2d 1199 (Ind. Ct. App. 1992), *trans. denied*. "An exception to this general rule exists for remedial statutes, i.e. statutes intended to cure a defect or mischief that existed in a prior statute." *Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 260 (Ind. 2003). The issue of retroactivity is a question of law which this court reviews *de novo*. *Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind., Inc.*, 604 N.E.2d 1199; *Bellows v. Bd. of Comm'rs of Cnty. of Elkhart*, 926 N.E.2d 96 (Ind. Ct. App. 2010).

The legislature enacted I.C. § 22-4-1-2, which went into effect July 1, 2014, and redefined the burden of proof to be used in making determinations about eligibility for unemployment compensation. Specifically, in subsection (c), the legislature provided that "[a]n applicant's entitlement to unemployment benefits is determined based on the information that is available *without regard to a burden of proof*." (Emphasis supplied.) Subsection (c) superseded existing case law which, prior to the enactment of I.C. § 22-4-1-2, set forth a burden-shifting framework in the unemployment context whereby the employer who alleged that an employee was discharged for just cause carried the burden of establishing a prima facie case of discharge for just cause. *See Albright v. Review*

*Bd. of Ind. Dep't of Workforce Dev.*, 994 N.E.2d 745 (Ind. Ct. App. 2013). Only after the employer met its burden did the burden then shift to the employee to rebut the employer's evidence. *Id.*

[8]   Here, K.L. was terminated from her position and filed her application for unemployment benefits prior to July 1, 2014. The claims deputy granted K.L.'s application for unemployment benefits on June 30, 2014. I.C. § 22-4-1-2 went into effect the following day. IU Health appealed and the ALJ conducted a hearing and issued findings of fact and conclusions of law on August 1, 2014, a month after I.C. § 22-4-1-2 went into effect. At the start of the July 10 review hearing and in her order denying K.L. unemployment benefits, the ALJ set forth the new standard set out in I.C. § 22-4-1-2, specifically noting that the burden of proof had been redefined and that there was no longer a presumption of entitlement to unemployment benefits.[2] The ALJ then made findings and conclusions based upon the evidence submitted by both sides. The Review Board affirmed the ALJ's findings and conclusions with the following addendum:

> In her opening remarks, the Administrative Law Judge initially began to instruct the parties as to which party had the burden of proof, but the Administrative Law Judge corrected herself and explained that there is no longer a burden of proof in unemployment cases. The Administrative Law Judge did not assign the burden of proof to either

---

[2] In subsection (d) the legislature provided: "There is no presumption of entitlement or nonentitlement to unemployment benefits. There is no equitable or common law allowance for or denial of unemployment benefits."

party after correcting herself on the record.  Furthermore, *the Administrative Law Judge correctly explained in her decision that the burden of proof has been eliminated and did not apply the burden of proof to either party in her decision.*

*Appellee's Appendix* at 1 (emphasis supplied).

[9]     On appeal, K.L. argues that the Review Board "violated a time-honored presumption against retroactive application of laws absent clear legislative intent to the contrary." *Appellant's Brief* at 6.  K.L. notes that the initial decision granting her unemployment benefits was made applying the burden of proof to the employer to establish that K.L. was terminated for just cause.  K.L. maintains that she was not given notice that a different standard would be applied and that the application of the different standard midway through her case is unfair.  In response, the Review Board asserts that I.C. § 22-1-4-2(c) is directed at the administrative appeals process, and thus, maintains that it correctly applied the law in effect at the time the administrative appeals process was initiated, i.e., July 10, 2014, which was after I.C. § 22-1-4-2 took effect.

[10]    We need not delve into the parties' competing arguments because under either standard, the result is the same.  We begin by noting that both parties were present during the telephonic hearing with the ALJ, were permitted to present testimony and cross-examine witnesses, and each submitted documentation in support of their respective positions.  K.L. testified on her own behalf and explained her understanding of the events leading up to her termination.  York and Slott testified on behalf of IU Health.  The ALJ considered all of the evidence presented and found that the evidence tipped the scales in favor of IU

Health. Thus, even if the burden-shifting framework that existed prior to the enactment of I.C. § 22-4-1-2 had been applied, the outcome would have been the same. To be sure, the Review Board's evidence would have satisfied its burden of proof had the burden been attributed to the Review Board, and K.L.'s evidence did not rebut the evidence presented by IU Health. We therefore conclude that if the Review Board incorrectly applied the new standard set forth in I.C. § 22-4-1-2, any resulting error was harmless. *See Ind. State Highway Comm'n v. Ind. Civil Rights Comm'n*, 424 N.E.2d 1024 (Ind. Ct. App. 1981) (applying the doctrine of harmless error in appellate review of an administrative decision).

2.

K.L. argues I.C. § 22-4-1-2 in its current form is unconstitutional as it deprives the applicant for unemployment benefits due process of law. Specifically, K.L. asserts that the legislature's enactment of I.C. § 22-4-1-2 redefining "the long standing burden on the employer to prove 'just cause' and 'breach of duty forces ALJ's [sic] to make arbitrary and unpredictable decisions." *Appellant's Brief* at 15. K.L. further assets that the change brought about by I.C. § 22-4-1-2 essentially gives absolute discretion to ALJs and the Review Board in deciding who may receive unemployment benefits. K.L. maintains that the result will be a "loss of any predictability or protection for the employee" and an increase in erroneous deprivation of unemployment benefits. *Appellee's Brief* at 14. K.L. requests a new hearing at which IU Health should be required to bear the burden of proving that she was discharged for just cause.

[12] When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well-established. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *Boehm v. Town of St. John*, 675 N.E.2d 318 (Ind. 1996). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id.* If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute. *Id.* This court reviews the constitutionality of statutes with the understanding that "'[t]he legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature.'" *Id.* at 321 (quoting *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind. 1992)).

[13] The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process contains both substantive and procedural elements. The issue presented concerns a burden of proof, which is a procedural matter.

[14] In analyzing a procedural due process claim, we engage in a two-part inquiry: "'The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. Only after finding

the deprivation of a protected interest do we look to see if the State's procedures comport with due process.'" *Perdue v. Gargano*, 964 N.E.2d 825, 832 (Ind. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999)). Further, we note that "the fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* When a deprivation is contemplated, "these principles require ... an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id.* Whether a party was denied due process is a question of law that we review *de novo.* *NOW Courier, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 871 N.E.2d 384.

[15] Here, the legislature simply redefined the burden of proof and expressly provided that new procedure for determining entitlement to unemployment compensation is to consider all the information brought forth by the parties. A review of the statutes comprising Indiana's Unemployment Compensation Act shows that there are numerous procedural safeguards to protect against arbitrary decisions by ALJs and any erroneous deprivation of unemployment benefits. By statute, ALJs are trained and required to ensure that a case is fully presented. To be sure, ALJs must be trained annually concerning unemployment law, rules for the conduct of hearings and appeals, and rules of conduct for ALJs and other individuals who adjudicate claims. I.C. § 22-4-17-4(b) (West, Westlaw current with all 2015 First Regular session of the 119th General Assembly legislation). The Department of Workforce Development is charged with monitoring hearings and decisions of ALJs, review board

members, and other adjudicators to ensure that they follow the law. I.C. § 22-4-17-4(c). To safeguard against arbitrary decisions by an ALJ, the Review Board is statutorily charged with reviewing decisions of ALJs and has discretion to decide whether additional information is necessary. I.C. § 22-4-17-5(b) (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation).

[16] During the hearing, the ALJ took care to allow both parties to present their evidence. K.L. and representatives from IU Health, including K.L. 's direct supervisor and a team leader, appeared at and participated in the July 30 hearing regarding K.L. 's entitlement to unemployment benefits. The ALJ conducted direct examination of K.L. , York, and Slott, and K.L. was given the opportunity to cross-examine them. The ALJ asked K.L. whether she objected to inclusion in the record of documents establishing the ALJ's jurisdiction and K.L. responded that she had no objection. K.L. also confirmed that she had been provided with IU Health's exhibits prior to hearing and that she had no objection to consideration thereof. K.L. was also given the opportunity to rebut the evidence provided in the exhibits. Additionally, the ALJ ensured that K.L. understood the procedures to be employed during the hearing and that she understood her appeal rights. After the ALJ rendered the decision, K.L. appealed to the Review Board. The Review Board reviewed the matter and affirmed the ALJ's determination.

[17] K.L. does not argue that she was deprived of her right to be heard or that the hearing was conducted improperly. To the contrary, K.L. was unquestionably

afforded a meaningful opportunity to be heard. Moreover, the elimination of the burden of proof would have had no impact on the conclusion as the ALJ's, and subsequently the Review Board's, determination was based on all of the evidence presented.

[18] On yet another ground, we conclude that I.C. § 22-4-1-2 does not violate principles of due process. As noted above, prior to enactment of I.C. § 22-4-1-2, case law had long placed the burden of proof upon the employer to make a prima facie showing that an employee was discharged for just cause. *See P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 942 N.E.2d 125 (Ind. Ct. App. 2011), *trans. denied*; *Indus. Laundry v. Review Bd. of Ind. Employment Sec. Div.*, 147 Ind.App. 40, 258 N.E.2d 160 (1970). In redefining the manner in which unemployment decisions are to be made, the legislature was exercising its constitutional prerogative to determine public policy relating to unemployment benefits and to enact legislation in furtherance thereof. We will not second-guess the legislature's decision in this regard. K.L. has not shown that she was denied due process in this matter.

### 3.

[19] K.L. argues that the Review Board failed to make appropriate findings to support its determination that she breached a duty in connection with her work, which duty she reasonably owed to IU Health as her employer. In any event, K.L. also argues that there is insufficient evidence to support the Review Board's determination that K.L. was terminated for just cause.

[20]    The Indiana Unemployment Compensation Act provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. I.C. § 22-4-17-12(a) (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015). When the Review Board's decision is challenged as being contrary to law, our review is limited to a two-part inquiry into: "(1) 'the sufficiency of the facts found to sustain the decision;' and (2) 'the sufficiency of the evidence to sustain the findings of facts.'" *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136, 1139 (Ind. 2011) (quoting I.C. § 22-4-17-12(f)); *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.,* 693 N.E.2d 1314 (Ind. 1998). Applying this standard, we review "(1) determinations of specific or 'basic' underlying facts, (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law." *Recker v. Review Bd. Of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1139.

[21]    The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review. *Id.* In conducting our analysis, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence most favorable to the Review Board's findings. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.,* 693 N.E.2d 1314. The Review Board's conclusions regarding ultimate facts involve an inference or deduction based on the findings of basic fact, and we typically review them to ensure that the Review Board's inference is "reasonable" or "reasonable in light of its findings." *Id.* at 1317-18 (citation and quotation marks omitted). We review

the Review Board's conclusions of law using a de novo standard. *Ind. State Univ. v. LaFief,* 888 N.E.2d 184, 186 (Ind. 2008).

[22] In Indiana, an individual is ineligible to receive unemployment benefits if he/she was discharged for "just cause." I.C. § 22-4-15-1(a). Discharge for just cause is defined, in pertinent part, as "any breach of duty in connection with work which is reasonably owed an employer by an employee." I.C. § 22-4-15-1(d)(9). "[T]he 'breach of duty' ground for just cause discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization." *Hehr v. Review Bd. of Ind. Employment Sec. Div.*, 534 N.E.2d 1122, 1126 (Ind. Ct. App. 1989). When applying a breach of duty analysis in this context, the Review Board must ascertain whether the action of the employee was considered a breach of a duty reasonably owed to the employer, and second, the Review Board must determine if the employee was at fault for the breach. *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d at 1140. Whether a person beaches a duty owed to the employer "is a very fact-sensitive determination which must be made on a case by case basis." *Hehr v. Review Bd. of Ind. Employment Sec. Div.*, 534 N.E.2d at 1127.

[23] Here, the ALJ concluded, and the Review Board affirmed, that IU Health discharged K.L. for just cause within the meaning of I.C. § 22-4-15-1(d)(9).[3] Specifically, it was determined that

> the claimant failed repeatedly to perform her job duties adequately. The ALJ concludes the claimant's failure to perform adequately was within the claimant's control, because she was failing to follow such simple steps such as reading emails, utilizing available forms, meeting deadlines, and following the employer's instructions. The claimant was given adequate training and assistance to meet her requirements, but failed to do so. Therefore, the Administrative Law Judge concludes the claimant was discharged for just cause as defined by Chapter 15-1 of the Act.

*Appellee's Appendix* at 4-5.

[24] K.L. first argues that the Review Board did not make appropriate findings to support its conclusion. Although the Review Board, in adopting the ALJ's findings and conclusions, did not explicitly state its conclusion that she was terminated for just cause in terms of I.C. § 22-4-15-1(d)(9), such does not necessitate reversal. A reading of the Review Board's decision in its entirety and the reasonable inferences drawn therefrom demonstrate that the Review Board determined that K.L. breached a duty in connection with her work, which duty she reasonably owed to IU Health as her employer.

---

[3] K.L. argues that the Review Board failed to make specific findings relating to I.C. § 22-4-15-1(d). Upon reading the ALJ's order, which the Review Board adopted, it is clear in context that a determination was made that K.L. was discharged for just cause because she "breach[ed] a duty in connection with work which is reasonably owed an employer by an employee." I.C. § 22-4-15-1(d)(9).

K.L. also argues that the Review Board's factual findings do not support its conclusion that she was terminated for just cause. Specifically, K.L. argues that her actions, which she does not dispute, did not constitute breach of a duty reasonably owed to her employer. Further, K.L. directs us to evidence that she claims supports her belief that she was discharged in retaliation for a letter she wrote criticizing the manner in which she was evaluated.

The record demonstrates that K.L. performed substandard work, despite repeated training and correction. As noted in the Review Board's findings, K.L. failed to follow such simple steps such as reading emails, utilizing available forms, meeting deadlines, and following specific instructions. In January 2014, K.L.'s supervisors reviewed K.L.'s work and informed her that she was not meeting expectations in taking initiative and developing expertise. Over the course of the next few months, K.L.'s work performance did not improve despite additional training and assistance. We have before held that a pattern of substandard work performance, despite repeated correction, may constitute a breach of duty in connection with work that was reasonably owed to an employer and is of such a nature that a reasonable employee would understand that the conduct was a violation of a duty owed to the employer. *Seabrook Dieckmann & Naville, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 973 N.E.2d 647 (Ind. Ct. App. 2012) (citing *Van Cleave v. Review Bd. of Ind. Employment Sec. Div.*, 517 N.E.2d 1260 (Ind. Ct. App. 1988) (noting that the claimant persisted in a pattern of substandard work performance even though he knew what his duties were, had received training and assistance, and had

been disciplined for substandard performance, and affirming the Board's decision denying the employee benefits)).

[27] In addition to the above, K.L. asserts that IU Health did not establish that its expectations relating to K.L.'s work product were reasonable. K.L., however, did not argue and does not now challenge that IU Health's expectations were unreasonable. The facts demonstrate that K.L. was adequately trained and received assistance in completing tasks related to her position. K.L. acknowledged that she understood IU Health's policies and that she understood the requirements of her position. K.L. never indicated that IU Health's expectations of her in her position were unreasonable.

[28] Further, we note that K.L. does not claim her inability to adequately perform the functions of her job was the result of factors not within her control. *See, e.g., Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev.*, 927 N.E.2d 906 (Ind. 2010) (holding that claimant's violation of employer's attendance policy due to debilitating medical condition subjected claimant to discharge, but such did not disqualify employee from unemployment compensation because employee was discharged through no fault of his own). Indeed, K.L. acknowledged that she had been trained on how to perform her job and admitted that she could have done a better job with certain aspects of her position. She offered no explanation for her inability to follow procedures, contact appropriate parties for necessary information, or timely complete tasks. K.L. simply did not follow procedures, use appropriate forms, read emails, meet deadlines, or follow instructions.

[29] Having reviewed the record that was before the ALJ and the Review Board, including the testimony of the parties, we conclude that IU Health adequately demonstrated that K.L. breached a duty in connection with work, which duty was reasonably owed IU Health, and that a reasonable employee of IU Health would understand that the conduct at issue was a violation of the duty owed. Accordingly, the Review Board's determination that K.L. was terminated for just cause is affirmed. To the extent K.L. asserts on appeal a different reason for her termination, we will not reweigh the evidence.

[30] Judgment affirmed.

Baker, J., and Najam, J., concur.