James GALLOWAY,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. PS454.

Court of Appeals of Indiana,
Third District.

July 8, 1981.

Rehearing Denied Sept. 10, 1981.

James Galloway, pro se.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Appellant Galloway entered a guilty plea to an indictment charging delivery of a Schedule III controlled substance, a class B felony. He was sentenced to six (6) years, the minimum term for such felonies, and sentence was ordered executed.

Galloway subsequently petitioned the court to grant shock probation pursuant to IC 35–4.1–4–18. The court originally denied the petition on grounds that Galloway was not entitled to initiate such a proceeding. The court later vacated this action and denied the motion on the merits. In doing so it did not grant Galloway a hearing. The question presented is whether the court thereby committed error. We conclude that it did not.

The statute provides,

"The court, within one hundred eighty (180) days after it imposes a sentence, and after a hearing at which the convicted person is present and of which the prosecuting attorney has been notified, may reduce or suspend the sentence, incorporating its reasons in the record. The court may suspend a sentence for a felony under this section only if suspension is permitted under IC 35–50–2–2."

The statute's primary purpose is to allow the trial judge latitude whereby he can recall a convicted defendant and place him on probation or reduce his sentence after the defendant has experienced the effects of incarceration. The intended effect is to scare the defendant without scarring him to aid in effecting his rehabilitation and give effect to the constitutional mandate that "[t]he penal code shall be founded on the principles of reformation, and not vindictive justice." Indiana Constitution, Art. I, Sec. 18.

There are several limitations imposed. The court must act within 180 days, which is to say that the court may not allow the defendant to remain incarcerated for more than six months if the device is to be used. Shock probation is unavailable if the defendant has a prior unrelated felony conviction or if conviction was for one of the serious felonies enumerated in IC 35–50–2–2 for the commission of which a grant of probation is not permitted. Additionally, the judge may not exercise the discretion granted by the statute without holding a hearing in the presence of the convicted person, giving notice thereof to the prosecuting attorney, and placing of record his reasons for the action taken. The apparent reason for these latter requirements is to afford the prosecutor opportunity to object to the procedure, and to permit the court, through the presence of the defendant, to confirm to his satisfaction his intention to utilize the discretion granted and discuss the terms of probation. The judge is also required to place in the public record the reason for his action.[1] We reach this conclusion because the plain language of the statute imposes the requirements of notice and hearing *only* where the court has tentatively determined to utilize the procedure. It is the court's preliminary determination to suspend or reduce the sentence that triggers the procedure.

Our interpretation is reinforced by the history of the act. This section replaced a provision formerly appearing as part of IC 35–7–1–1 which read,

"Provided, that on its own motion the court may, in open court and after notice to the prosecuting attorney and after review of the diagnostic report by the Department of Corrections, suspend the further execution of the sentence at anytime within six (6) months after the defendant shall have commenced to serve his sentence of imprisonment."

---

1. *Compare, e. g.*, IC 35–5–6–1.5 which requires the prosecutor to notify the victim of a crime of a potential plea bargain and give him opportunity to be present when the court considers his recommendation.

■ Thus, IC 35–4.1–4–18 added the requirement of a hearing when the statute is applied, but more importantly it opened up the process for utilizing its substance by eliminating the prior restraint that made the process available only on the court's own motion. Assuming that the legislature intended to change the law by amending the statutory language, we agree that the present statute permits a convicted person or his attorney to petition the court to utilize the section. Such a person is thereby afforded the opportunity to bring to the court's attention and consideration whatever facts and circumstances he deems pertinent. On the other hand, in adding the hearing provision to the statute the legislature could readily have made it apply whenever a petition was filed. It did not do so. We therefore conclude that the statutory intent does not require a hearing when the court chooses not to exercise its discretion under IC 35–4.1–4–18.

We turn then to the question of whether the due process clause is sufficiently implicated to require that Galloway be afforded a hearing. The traditional view held that once a criminal accused was properly convicted (i. e., his basic liberty was protected by conviction procedure that comported with the requirements of due process) his subsequent disposition within the confines of the punishment alternatives provided by the legislature was insulated from judicial review on due process grounds. In recent years, however, the ambit of constitutionally required due process hearings [2] has been expanded.

In *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the Court identified a limited liberty interest in a convict who had been granted parole. It found that a hearing was necessary before parole could be revoked. In *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, the requirement was ap-

plied to probation revocation procedures. *Wolff v. McDonnell* (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 extended due process guarantees to procedures applied to deprive prisoners of a statutorily created interest in good time credit for early release, and in *Vitek v. Jones* (1980), 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 they were applied to the decision to transfer a convict to a mental hospital.

Each decision, however, dealt with deprivation of a recognized liberty interest. "Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Gagnon*, 411 U.S. at 782, 93 S.Ct. at 1759. "We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the state." *Wolff*, 417 U.S. at 558, 94 S.Ct. at 2976.

Yet the predicate for invoking the protection of the fourteenth amendment continues to be a recognition that the convicted person has a right or justifiable expectation that he will not be so treated by the government in the absence of a hearing. *Vitek*, 100 S.Ct. at 1261. In *Meachum v. Farno* (1976), 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451, it was held that a transfer from one prison to another infringed upon no protected liberty interest since such transfers were within the discretion of prison officials and the prisoner had no right or justifiable expectation that he would not be transferred.

Directly on point to our consideration the Court has observed, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates* (1979), 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668. "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum*, 417 U.S. at 224, 96 S.Ct. at 2538. *See also Connecticut Bd. of Pardons*

---

2. When it is recognized that due process applies, the question becomes what process is due. We adopt appellant's approach of simply referring to a "due process hearing" so that in considering the initial question we need not be concerned with the problems of the second.

v. *Dumschat* (1981), —— U.S. ——, 101 S.Ct. 2460, 69 L.Ed.2d 158.

The grant of probation in Indiana is within the broad discretion of the trial judge. IC 35–50–2–2; *Lazzell v. State* (1974), 159 Ind.App. 185, 305 N.E.2d 884. The applicant for shock probation stands in the same shoes as the candidate for regular probation. He has been duly convicted and incarcerated. He has no right or justifiable expectation that his sentence will be reduced or suspended. Since he has no recognized liberty interest, the due process clause of the fourteenth amendment does not require that a hearing be held to consider his petition for shock probation. *Greenholtz, supra; Dumschat, supra.*

Affirmed.

HOFFMAN, P. J., and STATON, J., concur.