James E. **MANLEY, Appellant–
Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 53A01–0701–PC–43.

Court of Appeals of Indiana.

July 3, 2007.

James E. Manley, Michigan City, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

James W. Manley appeals the denial of his petition for modification of sentence, presenting the following restated issues for review:

1. Must the trial court conduct a hearing when a prisoner files a petition to modify sentence, and the Department of Correction (DOC) declines to approve the request?

2. Did the DOC's failure to offer certain programs at certain times constitute cruel and unusual punishment under the Indiana Constitution?

3. Did the trial court have authority to modify Manley's sentence when the request was submitted more than one year after Manley began serving his sentence and the request for modification was not approved by the prosecuting attorney?

We affirm.

The following facts of the underlying convictions were set out in this court's unpublished memorandum decision affirming Manley's conviction, following a jury trial, of two counts of A-felony child molesting and two counts of B-felony child molesting:

> The Bloomington Office of Family and Children received a complaint alleging that Manley had inappropriately touched his eight-year-old daughter, A.M. After talking with A.M., the social worker called Bloomington Police Department Sergeant James Haverstock to assist in the investigation. After taking a statement from A.M., Haverstock contacted Manley and asked him to come to the police station for an interview concerning the allegations.
>
> When Manley arrived at the police station, Haverstock took Manley to an interview room where he told Manley that he was not under arrest and that he was free to leave at any time. Haverstock advised Manley of his *Miranda* rights and asked him to sign a waiver form. Manley insisted that he understood his *Miranda* rights but refused to sign the waiver, stating that he wanted to preserve his rights in case he wanted to invoke them later. Manley did, however, state that he was willing to talk to Haverstock "off the record." *Record* at 705 (State's Exhibit No. 4). A videotape recording was made, without Manley's knowledge or consent, of everything that occurred in the interview room from the

time Manley entered the room until he left at the conclusion of the interview. Manley admitted molesting A.M. on several occasions and freely discussed the details of each incident.

*Manley v. State,* No. 53A04–9806–CR–333, slip op. at 2–3, 708 N.E.2d 928 (Ind.Ct. App. Feb 18, 1999) (footnote omitted). On December 24, 1997, Manley was sentenced to concurrent, forty-year terms for each of the class A felonies, concurrent, fifteen-year terms for each of the class B felonies, with the forty- and fifteen-year sentences to run consecutively. Thus, Manley received a fifty-five-year executed sentence. On December 19, 2006, Manley, pro se, petitioned the trial court to modify his sentence by reducing the term of years. The court denied the motion two days later.

Two of Manley's three challenges to that ruling allege a portion of Ind.Code Ann. § 35–38–1–17(b) (West, PREMISE through 2006 Second Regular Session) is unconstitutional. When evaluating a claim that a statute violates the Indiana Constitution, our standard of review is well established. Every statute is presumed to comport with the Indiana Constitution unless and until that presumption is clearly overcome by a contrary showing. *Schweitzer v. State,* 700 N.E.2d 488 (Ind. Ct.App.1998), *trans. denied.* "The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party." *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996).

1.

Manley contends I.C. § 35–38–1–17(b) runs afoul of the Indiana Constitution because it permits a court to deny a petition for modification without first conducting a hearing.

Manley offers no authority for the assertion that "trial courts have a duty to [sic] the Indiana Constitution to conduct evidentiary hearings when presented with petitions for modification of sentences." *Appellant's Brief* at 5. Neither does our research reveal a case recognizing such a duty. We note that I.C. § 35–38–1–17(b) has withstood several constitutional challenges. In *Beanblossom v. State,* 637 N.E.2d 1345 (Ind.Ct.App.1994), *trans. denied,* we considered a claim that it violated the constitutional separation of powers doctrine by impairing courts' inherent sentencing power in that it gave prosecuting attorneys veto power over the judge in those matters. We rejected that argument, concluding that courts retain only such continuing jurisdiction over sentencing matters as is permitted by the judgment itself or as is conferred upon the court by statute or rule. We held, in essence, that the legislature was exercising its constitutional prerogative to limit the court's power in that regard. We also considered and rejected claims that I.C. § 35–38–1–17(b) violated the constitutional guarantees of due process, equal protection, and equal access to the courts.

In *Schweitzer v. State,* 700 N.E.2d 488 we considered a claim that I.C. § 35–38–1–17(b) is unconstitutional because it violates the guarantee of proportionality in criminal punishments and the prohibition against vindictive justice. We rejected that argument and the premise upon which it was based, i.e., that the prosecutor's refusal to approve the defendant's sentence modification request amounted to vindictive justice. There, as in the instant case, the defendant had "been offered and ha[d] taken full advantage of numerous opportunities for rehabilitation while incarcerated," *Schweitzer v. State,* 700 N.E.2d at 491. In light of those accomplishments, the defendant concluded that vindictiveness was the only possible motivation for

denying a request for sentence modification.

Although *Schweitzer* presented somewhat different constitutional challenges, it is similar enough to be instructive on some points on Manley's claim. Like the defendant in *Schweitzer,* Manley at least implies that the failure to recognize his achievements while incarcerated by reducing his sentence is inconsistent with the stated goal of rehabilitation and tantamount to vindictive justice. In fact, it appears the central theme of Manley's argument that hearings are required is that the lack of a hearing evinces vindictiveness on the State's part. We reiterate the *Schweitzer* conclusion that refusing to reduce the length of a sentence is not the equivalent of denying the right to rehabilitate, much less the equivalent of vindictive justice. There is nothing vindictive about requiring Manley to serve his entire sentence, notwithstanding that he has diligently pursued educational opportunities while incarcerated. Indeed, by doing so, his rehabilitation progresses.

We note in this regard the observation in *Beanblossom v. State,* 637 N.E.2d at 1348 that there is "no recognized liberty interest in a modification of his sentence under Indiana law, and the due process clause of the fourteenth amendment does not require that the decision to modify be free from Indiana's condition that it be subject to the approval of the prosecuting attorney." In a somewhat similar context, we have held that because there is no recognized liberty interest in shock probation, the due process clause of the Fourteenth Amendment does not require that there must be a hearing to consider a petition for shock probation. *See Galloway v. State,* 422 N.E.2d 1290 (Ind.Ct.App. 1981). We conclude that what is true in the context of requests for shock probation is also true with respect to requests for sentence modification—and for the same reasons. Accordingly, we decline Manley's invitation to create a requirement that a hearing must be held before a trial court can rule upon a request for sentence modification under I.C. § 35–38–1–17(b) where a prosecutor has refused to approve the request.

Finally on this issue, we observe that if Manley believes courts should conduct hearings before ruling upon the petition, he should direct his efforts toward convincing the legislature to amend I.C. § 35–38–1–17(b) along those lines. *See Beanblossom v. State,* 637 N.E.2d 1345 and *Schweitzer v. State,* 700 N.E.2d 488.

2.

■ Manley claims the DOC is in violation of the Indiana Constitution by failing to offer, *at this time,* all of the rehabilitative services that have been recommended for Manley. This claim is part of his contention that I.C. § 35–38–1–17(b) violates "Indiana's constitutional ban on vindictive justice," *Appellant's Appendix* at 4, as expressed in article 1, section 18 of the Indiana Constitution ("[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice"). We emphasize "at this time" in the opening sentence because the record reflects that there is at least one program—a sex-offender program—that is not offered where Manley is incarcerated, but will be available to him at some point in the future in a different facility. This is a result of a DOC policy under which the program is offered at one particular facility and prisoners are transferred to that facility in order to participate in the program within three years of their projected release date. We presume there is some benefit in having completed the program near the date of release, and perhaps that is one of the reasons underlying this policy. Regardless, a system of rehabilitative justice does

not require that every offender program or service be made available at the earliest possible opportunity, nor as the desires of the individual prisoner may dictate. Put another way, the failure to offer the program or programs a particular prisoner wants at the time he or she wants it is not vindictive justice. The list of available programs and the time and method they are offered are administrative decisions left to the discretion of the DOC, which no doubt makes its determinations after considering practical factors such as need and available resources. There is nothing sinister or vindictive about such allocation of resources.

Finally on this issue, we note that, even ignoring the problems discussed above, Manley must first exhaust his administrative remedies before filing an action in court challenging the programs offered by the DOC. *See, e.g., Samuels v. State,* 849 N.E.2d 689 (Ind.Ct.App.2006), *trans. denied.*

### 3.

■ Manley contends the trial court erred in denying his petition for modification of sentence and urges this court to reverse the trial court's ruling and grant his petition. Like the trial court, we have no authority to do so.

I.C. § 35–38–1–17(b) states, "If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, *subject to the approval of the prosecuting attorney.*" (Emphasis supplied.) In *State v. Fulkrod,* 753 N.E.2d 630 (Ind.2001), our Supreme Court determined that pursuant to this provision, where 365 days have passed since the sentence was imposed, and the prosecutor has not approved of the requested sentence modification, "the trial court lack[s] au-

thority to modify [the original] sentence." *Id.* at 633.

Manley submitted his request for modification long after the statutory 365–day period had lapsed. He does not direct us to anything in the appellate materials reflecting that the prosecutor approved his petition for modification, nor does our research reveal such acquiescence. Lacking that prerequisite for sentence modification pursuant to I.C. § 35–38–1–17(b), the trial court had no authority to grant Manley's request. *State v. Fulkrod,* 753 N.E.2d 630. Therefore, the trial court did not err in denying Manley's petition.

Judgment affirmed.

BAKER, C.J., and CRONE, J., concur.